**David Wayne HARNER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–98–00125–CR.**

Court of Appeals of Texas,
Texarkana.

Submitted June 22, 1999.

Decided June 23, 1999.

Dean M. Swanda, Attorney at Law, Arlington, for appellant.

Charles M. Mallin, District Attorney's Office, Fort Worth, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Justice GRANT.

David Harner was indicted for the offense of attempted aggravated kidnapping. He was found guilty by a jury, which assessed punishment at confinement for ten years. The trial court sentenced him accordingly, and Harner appeals from this conviction.

Harner contends that the trial court erred in denying his motion to suppress and thereafter admitting his statement into evidence; in failing to instruct the jury that it could disregard his statement if it determined that his statement was involuntary; and in failing to include in the jury charge the lesser included offenses of attempted kidnapping and unlawful restraint. He also contends that his trial counsel was ineffective.

■ Harner first contends the trial court erred in finding his statement voluntary at the suppression hearing and then admitting it during the trial. He maintains that, given his mental impairment, he did not understand the warnings given to him and that he did not make a knowing, voluntary, and intelligent waiver under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and TEX.CODE CRIM. PROC. ANN. art. 38.22 (Vernon 1979 & Supp.1999). In addition, he asserts that

his rights under the Fifth and Sixth Amendments to the United States Constitution and under Art. I, § 10 of the Texas Constitution were violated because the police officers did not effectively communicate the statutory warnings to him.

 The ruling of a trial court on a motion to suppress evidence will not be set aside absent a showing of abuse of discretion. *Maddox v. State*, 682 S.W.2d 563, 564 (Tex.Crim.App.1985); *Braggs v. State*, 951 S.W.2d 877, 880 (Tex.App.-Texarkana 1997, pet. ref'd). We do not engage in our own factual review. *Braggs*, 951 S.W.2d at 880. Instead, viewing the evidence in the light most favorable to the trial court's ruling, we consider only whether the trial court improperly applied the law to the facts. *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990); *Braggs*, 951 S.W.2d at 880. At a suppression hearing, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Romero*, 800 S.W.2d at 543. Therefore, if the record supports the trial court's findings, we will not disturb those findings.

 TEX.CODE CRIM. PROC. ANN. art. 38.21 (Vernon 1979) provides that a statement of an accused may be used in evidence against him if it appears that it was freely and voluntarily made without compulsion or persuasion. The determination of whether a statement is voluntary is based on an examination of the totality of circumstances surrounding its acquisition. *Penry v. State*, 903 S.W.2d 715, 744 (Tex. Crim.App.1995) (citing *Griffin v. State*, 765 S.W.2d 422, 429 (Tex.Crim.App.1989)).

 Evidence of mental retardation and mental impairment is a factor to be considered by the court in determining from the totality of the circumstances whether the accused voluntarily and knowingly waived his rights prior to confessing. *Bizzarri v. State*, 492 S.W.2d 944, 946 (Tex.Crim.App.1973). The question is whether the accused's mental impairment is so severe that he is incapable of understanding the meaning and effect of his statement. *Casias v. State*, 452 S.W.2d 483, 488 (Tex.Crim.App.1970). This is usually a question for the fact finder. *Bell v. State*, 582 S.W.2d 800, 809 (Tex.Crim. App.1979). The courts of Texas have also held that statements of an accused must not have been obtained by the influence of hope or fear applied by a third person to the prisoner's mind. *See Creager v. State*, 952 S.W.2d 852, 856 (Tex.Crim.App.1997). This factor must also be considered viewing the totality of the circumstances to determine whether the accused voluntarily and knowingly waived his rights prior to confessing. *Id.*

The following evidence was presented during the pretrial hearing regarding suppression of the written statement. Officer Dave Cloninger testified that he answered a call for service at Trimble Tech High School, where he met with Tonya Graves. Graves told him that a white male, later identified as Harner, had tried to take her child from her and fled when she threatened to call the police. After a brief search of the area, Cloninger located Harner at a nearby Mental Health and Mental Retardation center (MHMR). Cloninger placed Harner in the back seat of his patrol car, where Sergeant Kevin Foster later questioned him.

Foster testified that Harner had been read his *Miranda* warnings by Officer M.T. Hiebert. Harner initially told Foster that the child was throwing rocks and he had tried to stop him. Foster testified that he was the first to ask Harner if he intended to fondle and have sex with the child. Initially, Harner did not say anything about the boy other than that the child was throwing rocks and he felt threatened. Harner responded to Foster's questions by saying, "he wouldn't fondle—if he was going to fondle the child, that he would need to get the child away from his mother and between some cars in a parking lot." In order to have sex with him, Harner stated that, "he would have to find somewhere safe, . . . such as a vacant house or an alley." Harner also told Foster that he thought about fondling the

child but could not because he did not want to embarrass the child. Detective David Dillard testified that Harner was given his *Miranda* warnings, signed them, and said that he understood them. Dillard further testified that Harner then gave a statement, which was typed word-for-word by the secretary, without any influence from anyone or any promises about setting him free if he gave a statement. According to Dillard, Harner appeared able to understand and intelligently answer questions and respond to his requests. Dillard further testified that Harner did not at any time invoke his right to counsel or his right to remain silent.

Harner testified that he had an eighth-grade education, all "special ed." From ages twelve to nineteen, he was placed at Lubbock State School for Mental Problems; from nineteen to twenty-one, he lived at Marbridge Ranch, also a school for the mentally disabled, in Austin; and he has been seeing a doctor at the MHMR center ever since. He is now forty-two years old. Harner is on medication to reduce anxiety and make him "not hyper," and was taking the medication on the day of the offense. Harner further testified that he was not able to comprehend his *Miranda* warnings, he invoked his right to an attorney but was not allowed to speak with one before signing the statement, and he was forced to make the statement. He testified that the statement is his, but he was told by Dillard that, if he signed the statement, he could go back to MHMR. Harner testified that he had never been in a police station as a defendant. He can read, but he did not read the statement before he signed it. Harner also testified that he has been diagnosed and treated for "sex problems." Harner's regular doctor, William Foster, tested him and concluded that Harner was competent to stand trial.

In summary, the record reflects that Harner was advised of his statutory rights, he understood them, and he voluntarily waived them before making his statement. The statement was written as Harner related the events, and it was read to him before he signed it. Harner's evidence of mental retardation does not, standing alone, render his statements inadmissible. *See White v. State*, 591 S.W.2d 851, 858 (Tex.Crim.App.1979); *Casias*, 452 S.W.2d at 488; *Grayson v. State*, 438 S.W.2d 553, 555 (Tex.Crim.App.1969). We find that the trial court did not abuse its discretion by overruling Harner's motion to suppress and admitting his statement into evidence. Harner's first contention is overruled.

▮ In his second contention, Harner argues the trial court erred in failing to submit a jury instruction on the voluntariness of his statement. Although he did not request an instruction on the voluntariness of his oral statement, he argues that the trial court was required by Article 38.22, § 7 of the Texas Code of Criminal Procedure to give an instruction when the issue of the voluntariness of a defendant's statement is raised. TEX.CODE CRIM. PROC. ANN. art. 38.22, § 7 (Vernon 1979). The State argues that Harner waived any error by failing to request the instruction and that the evidence did not raise the issue of voluntariness.

▮ The record here reflects that Harner neither requested an instruction on the voluntariness of his statement in the court's charge on guilt, nor objected to the absence of such an instruction. When the appellant does not preserve jury charge error by failing either to object to the charge or to request a charge, he must then prove fundamental error by showing egregious harm, i.e., error so egregious and creating such harm that he did not receive a fair and impartial trial. *Cormier v. State*, 955 S.W.2d 161, 163 (Tex.App.-Austin 1997, no pet.); *Castillo v. State*, 944 S.W.2d 440, 442–43 (Tex.App.-Houston [14th Dist.] 1997, no pet.) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim. App.1984)). To determine this, the record is examined as a whole:

> [T]he actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of

counsel and any other relevant information revealed by the record of the trial as a whole. *Almanza*, 686 S.W.2d at 171; *Castillo*, 944 S.W.2d at 443.

 Applying these standards, we cannot say that the failure of the trial court to include a jury charge on the voluntariness of his statement denied Harner a fair and impartial trial. When the evidence presented at trial raises a factual dispute over whether a defendant's written statement was voluntary, he is entitled to an instruction in the jury charge advising the jury generally on the law pertaining to such statement. *Dinkins v. State*, 894 S.W.2d 330, 353 (Tex.Crim.App.1995). A trial court does not err in refusing to submit the issue of voluntariness to the jury when the appellant fails to request the issue be submitted to the jury and where there is no evidence of voluntariness raised before the jury. *See Butler v. State*, 872 S.W.2d 227, 236 (Tex.Crim.App. 1994); *Wiley v. State*, 632 S.W.2d 746, 748 (Tex.Crim.App.1982).

Other than Harner's testimony during the suppression hearing,[1] we could find very little evidence in the record raising a voluntariness issue. Because the issue of voluntariness was not before the jury, the trial court did not err in not submitting the issue of voluntariness to the jury. Furthermore, even if this refusal were error, Harner. has not proven egregious harm. Harner's second contention is overruled.

 In Harner's third contention, he asserts that the trial court erred by denying his request to instruct the jury on the lesser included offenses of attempted[2] kidnapping and unlawful restraint. A person commits an offense of **aggravated kidnapping** if he intentionally or knowingly abducts another person with the intent to inflict bodily injury on him, to violate or abuse him sexually, or to terrorize him or a third person. TEX. PEN.CODE ANN. § 20.04(a)(4), (5) (Vernon Supp.1999). Texas law defines **kidnapping** as the intentional or knowing abduction of another person. TEX. PEN.CODE ANN. § 20.03 (Vernon 1994). Abduct means to restrain a person with the intent to prevent his liberation by either (1) secreting or holding him in a place where he is not likely to be found, or (2) using or threatening to use deadly force. TEX. PEN.CODE ANN. § 20.01 (Vernon 1994). Restrain means to restrict a person's movements without consent, so as to interfere substantially with his liberty, by moving him from one place to another or by confining him. *See id.* Restraint is without consent if it is accomplished by force, intimidation, deception, or any means, including acquiescence of the victim if the victim is a child less than fourteen years of age. *See id.* A person commits the offense of **unlawful restraint** if he intentionally or knowingly restrains another person. TEX. PEN.CODE ANN. § 20.02 (Vernon 1994 & Supp.1999). The element which aggravates kidnapping is the *intent to inflict bodily injury, violate or abuse sexually, or terrorize. Compare* TEX. PEN.CODE ANN, § 20.04 *with* TEX. PEN.CODE ANN. § 20.03. Kidnapping is accomplished by *abduction*, which includes restraint, but unlawful restraint is committed by *restraint only. Compare* TEX. PEN.CODE ANN. § 20.03 *with* TEX. PEN.CODE ANN. § 20.02.

---

1. Presentation of evidence at a hearing on a motion to suppress will not suffice to raise a factual issue for jury submission where the hearing is held out of the presence of the jury. *See* 40 GEORGE E. DIX & ROBERT O. DAWSON, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 4.133 (1995).

2. Section 15.01 of the Texas Penal Code states that a person commits an offense of criminal attempt if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended. TEX. PEN.CODE ANN. § 15.01(a) (Vernon 1994). Additionally, if a person attempts an offense that may be aggravated, his conduct constitutes an attempt to commit the aggravated offense if an element that aggravates the offense accompanies the attempt. TEX. PEN.CODE ANN. § 15.01(b) (Vernon 1994).

■ The *Royster* test states that a defendant is entitled to a charge on a lesser offense if (1) the lesser offense is included within the proof necessary to establish the offense charged, and (2) there is some evidence 'hat would permit the jury rationally to find that if the defendant is guilty, he is guilty only of the lesser offense. *Royster v. State,* 622 S.W.2d 442, 446 (Tex. Crim.App. [Panel Op.] 1981); *Rousseau v. State,* 855 S.W.2d 666, 673 (Tex.Crim.App. 1993); *Dowden v. State,* 758 S.W.2d 264, 268 (Tex.Crim.App.1988). In applying the two-pronged *Royster* test, the trial court should make a determination as to whether the evidence of the lesser offense would be sufficient for a jury rationally to find that the defendant is guilty only of that offense and not the greater offense. *Rousseau,* 855 S.W.2d at 673. In determining whether the trial court erred in failing to give a charge on a lesser included offense, all of the evidence must be considered. *See Havard v. State,* 800 S.W.2d 195, 216 (Tex.Crim.App.1989) (opinion on reh'g). A jury, as trier of fact, is entitled to believe all or part of the conflicting testimony proffered and introduced by either side. *Bignall v. State,* 887 S.W.2d 21, 23–24 (Tex.Crim.App.1994). Furthermore, a jury can selectively believe all or part of the evidence admitted at trial. *Id.* at 24. The Court of Criminal Appeals has determined that it is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense; there must be some evidence directly germane to a lesser included offense for the fact finder to consider before an instruction on a lesser included offense is warranted. *Id.*

The Court of Criminal Appeals has previously held that the offense of unlawful restraint is a lesser included offense of kidnapping which, in turn, is a lesser included offense of aggravated kidnapping. *See Schweinle v. State,* 915 S.W.2d 17, 19 (Tex.Crim.App.1996). Therefore, the first prong of *Royster* has been satisfied.

Harner contends that the trial court was required to submit the lesser included offenses because there was evidence negating the aggravating element of intent to violate or abuse sexually. In support, Harner points to evidence showing he is forty-two years old and has never been diagnosed as a pedophile, although he admits that he may have had some pedophilic thoughts. Harner claims that his sexual disorder deals with improperly propositioning adult women for sex and paying women for sex to the point of financial irresponsibility. He also points to the fact that no evidence exists that he has ever forced his will on anyone in the past. Harner's mother testified that her son would not hurt a child or anyone else. The State introduced Harner's statement,[3] wherein Harner confessed that he was thinking about fondling the boy when he took the boy from his mother which added evidence of the element of aggravation to the offense.

In examining the evidence on which Harner relies, the testimony from Harner's mother was opinion as to her son's

---

3. The relevant parts of Harner's statement follow.

My name is David Wayne Harner. I am 40 years old.... I have completed 8 years of schooling. I do read, write and understand the English language.

On Monday, November 11, 1996, I was walking over to the M.H.M.R. office ... to pick up my money. On my way to the M.H.M.R. I saw a little Black boy and his mother at the pay phone. I was thinking about grabbing the little boy and fondling him and taking him to an abandon [sic] building or something. I walked over to the little boy and his mom [sic] I grabbed the little boy by his shirt. The little boy had a rock in his hand. I told the little boy to let me see it. I walked with the little boy a little bit about three feet and the mother grabbed the little boy and told me to just go. I ran off to the M.H.M.R. Office. When I first saw the little boy I thought about grabbing him and fondling him.

I go to counseling every Saturday to prevent me from thinking about sex a lot. I have lost jobs before because of thinking about sex.

Never before thought about fondling a little boy.

character and does not relate to the elements of the offense charged. *See, e.g., Fox v. State,* 693 S.W.2d 593, 599 (Tex. App.-San Antonio 1985, no pet.) (holding that in prosecution for aggravated rape and aggravated sexual abuse, testimony about defendant's character did not raise lesser included offenses of rape and sexual abuse). After reviewing all of the evidence, we believe that Harner relies upon speculation, which does not affirmatively raise the issue or require an instruction on the lesser included offenses of attempted kidnapping and unlawful restraint. *See Bignall,* 887 S.W.2d at 23–24.

Testimony from the child's mother that Harner tried to take the child, coupled with Harner's statement indicating that he wanted to take the boy to an abandoned building, is sufficient to establish the element of abduction. No evidence was presented that Harner only intended to hold the child without secreting him away. Accordingly, Harner was not entitled to an instruction on the lesser included offense of unlawful restraint.

If the evidence of restraint and attempted abduction was presented without evidence of an aggravating factor, then Harner would be entitled to an instruction on attempted kidnapping. However, evidence of Harner's intent to sexually assault or abuse the child exists. With the addition of the evidence of intent to violate or abuse sexually, Harner was not entitled to an instruction on the lesser included offense of attempted kidnapping.

Harner does not point to any evidence, nor could we find any evidence, which indicates that he was guilty *only* of attempted kidnapping or *only* of unlawful restraint. Instead, the evidence shows that Harner was pulling the child away from his mother with the intent to take the child and violate or abuse the child sexually, satisfying the requirements of attempted aggravated kidnapping.[4] Harner's third contention is overruled.

In Harner's final contention, he asserts that he received ineffective assistance of counsel at the guilt/innocence stage of trial because his counsel did not request that the jury be instructed that it could disregard Harner's statement if it determined the statement was involuntary.

The standard of testing claims of ineffective assistance of counsel is set out in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted for Texas constitutional claims in *Hernandez v. State,* 726 S.W.2d 53, 57 (Tex.Crim.App.1986). Appellant must prove: (1) that his counsel's representation was deficient; and (2) that the deficient performance was so serious that it prejudiced his defense. This means the appellant must prove by a preponderance of the evidence that counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *McFarland v. State,* 845 S.W.2d 824, 842 (Tex.Crim.App. 1992). Under this standard, a claimant must prove that counsel's representation so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland,* 466 U.S. at 686, 104 S.Ct. 2052.

The review of counsel's representation is highly deferential, and we indulge a strong presumption that counsel's conduct falls within a wide range of reasonable representation. *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. The burden is on the appellant to overcome that presumption by identifying the acts or omissions of counsel that are alleged to have constituted the ineffective assistance and then to affirmatively prove that they fall below the professional norm for reasonableness. *Jackson v. State,* 973 S.W.2d 954 (Tex.Crim.App.1998). Appellant must then prove that counsel's errors, judged by

---

**4.** *See* Tex. Pen.Code Ann. § 15.01, § 20.04 (Vernon Supp.1999).

the totality of the representation, denied him a fair trial. Merely showing that they had some conceivable effect on the proceedings is inadequate. *Strickland,* 466 U.S. at 693, 104 S.Ct. 2052.

■ In evaluating the first prong of the *Strickland* inquiry, counsel's competence is presumed, and an appellant must rebut this presumption by proving that the challenged action was not sound trial strategy. *Kimmelman v. Morrison,* 477 U.S. 365, 384, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986) (citing *Strickland,* 466 U.S. at 688–89, 104 S.Ct. 2052). A full inquiry into the strategy or tactics of counsel should be made only if, from all appearances after trial, there is no plausible basis in strategy or tactics for counsel's actions. *Ex parte Burns,* 601 S.W.2d 370, 372 (Tex.Crim. App.1980); *Stenson v. State,* 695 S.W.2d 569, 571 (Tex.App.-Dallas 1984, no pet.). This Court will not second-guess through hindsight the strategy of counsel at trial, nor will the fact that another attorney might have pursued a different course support a finding of ineffectiveness. *Blott v. State,* 588 S.W.2d 588, 592 (Tex.Crim.App. 1979). That another attorney, including appellant's counsel on appeal, might have pursued a different course of action does not necessarily indicate ineffective assistance. *Johnston v. State,* 959 S.W.2d 230, 236–37 (Tex.App.-Dallas 1997, no pet.); *Weeks v. State,* 894 S.W.2d 390, 391 (Tex. App.-Dallas 1994, no pet.).

■ If the first prong is met, the appellant must also show that counsel's performance prejudiced the defense. *Strickland,* 466 U.S. at 692, 104 S.Ct. 2052. It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. *Id.* at 693, 104 S.Ct. 2052. Instead, the *Strickland* prejudice prong requires the defendant to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S.Ct. 2052. A reasonable probability is a probability sufficient to undermine the court's confidence in the outcome. *Id.*

When addressing this second step of *Strickland,* the reviewing court should examine counsel's errors not as isolated incidents, but in the context of the overall record. *Bridge v. State,* 726 S.W.2d 558, 571 (Tex.Crim.App.1986). Additionally, the reviewing court need not examine both *Strickland* prongs if one cannot be met. *Strickland,* 466 U.S. at 697, 104 S.Ct. 2052.

The record in the instant case is silent as to why Harner's trial counsel failed to request an instruction on the voluntariness of the statement. To hold trial counsel's decision not to request an instruction in the instant case as ineffective assistance would call for speculation, and the record lends no support for such holding.

The first prong of *Strickland* is not met in the instant case. Due to the lack of evidence in the record concerning trial counsel's reasons for not requesting an instruction on the voluntariness of the statement, we are unable to conclude that Harner's trial counsel's performance was deficient. Consistent with *Strickland,* we must presume that counsel is better positioned than this Court to judge the pragmatism of the particular case and that he made all significant decisions in the exercise of reasonable professional judgment. The record in the instant case contains no evidence to rebut that presumption. Accordingly, Harner's contention is overruled. We note that when a direct appeal has not provided an adequate record to evaluate a claim that might be substantiated through additional evidence gathered in a habeas proceeding, the Court of Criminal Appeals will not apply the doctrine that forbids raising a claim on habeas after it was rejected on appeal. *Jackson,* 973 S.W.2d 954; *Ex parte Torres,* 943 S.W.2d 469, 475 (Tex.Crim.App.1997). This point of error is overruled.

The judgment of the trial court is affirmed.