# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00527-CR

**Bryan Scott Horton, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF LAMPASAS COUNTY, 27TH JUDICIAL DISTRICT
### NO. 7125, HONORABLE JOE CARROLL, JUDGE PRESIDING

Appellant Bryan Scott Horton and another sixteen-year-old boy, Jeremy Keith Coffey, murdered a sixteen-year-old girl in her home, apparently because they wanted to take her father=s pistol. Appellant and Coffey were taken into custody three days after the murder and, within hours, appellant confessed. Appellant, after being certified for trial as an adult, waived his right to trial by jury. The district court found him guilty of murder and sentenced him to imprisonment for forty years.[1] *See* Tex. Pen. Code Ann. ' 19.02(b)(1) (West 1994). In five points of error, appellant contends the district court erred by overruling the motion to suppress his confession. We will affirm the conviction.

---

[1] Coffey was also tried as an adult. A jury found him guilty of murder and imposed punishment of life imprisonment. Coffey=s conviction was affirmed by this Court. *Coffey v. State,* No. 03-01-00342-CR, 2002 Tex. App. LEXIS 2049 (Tex. App.CAustin Mar. 21, 2002, no pet.) (not designated for publication).

We review a trial court=s ruling on a motion to suppress evidence for an abuse of discretion. *Villareal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). In this review, we defer to the district court=s factual determinations but review *de novo* the court=s application of the law to the facts. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). Where the district court did not make explicit findings of fact, we review the evidence in the light most favorable to the court=s ruling and assume the court made findings that are supported by the record and buttress its conclusion. *Carmouche v. State*, 10 S.W.3d 323, 327-28 (Tex. Crim. App. 2000).

### *Testimony at Suppression Hearing*

Acting on information linking appellant and Coffey to the murder, Texas Ranger Fred Cummings and Lampasas County Sheriff=s Investigator David Whitis drove to Harker Heights, where appellant lived with his aunt, Patty Craddock. The officers told Craddock they wanted to question appellant regarding his involvement in a murder. Craddock told the officers that appellant was with Coffey. The officers telephoned this information to Lampasas County Sheriff Gordon Morris and Investigator Doug Kahlstrom, who were at that time waiting outside the Copperas Cove apartment where Coffey lived with his mother. At about 11:30 p.m., an automobile matching the description the officers had been given drove into the apartment parking lot, stopped briefly, and then started to leave. Morris and Kahlstrom stopped the car, which was driven by Coffey, and took Coffey and appellant into custody. Kahlstrom testified that he advised appellant and Coffey of their rights. *See Miranda v. Arizona*, 384 U.S. 436 (1966); *see also* Tex. Code Crim. Proc. Ann. art. 38.22 (West 1979 & Supp. 2002).

Morris called Cummings and Whitis, who were still at the Craddock residence, and told them that appellant and Coffey were in custody. Cummings testified that he told Craddock what had happened and advised her that appellant would first be taken to the Lampasas County Sheriff=s office and then to the juvenile detention center in Killeen. Cummings also told Craddock that appellant was going to be questioned and that she had the right to be present. According to Cummings, Craddock said she would wait to speak with appellant at the detention center.

Approximately one hour after appellant and Coffey were taken into custody, they arrived with Morris and Kahlstrom at the Lampasas County Jail. Appellant was taken to the sheriff=s conference room. Linda Rich, the Lampasas County Juvenile Probation Officer, came to the jail, met with appellant in the conference room, and filled out the ACaseworker-4 intake which is information we have to have for the computer to enter the juvenile into the computer.@ At this point, it was 2:20 a.m. Rich then called appellant=s mother in San Angelo and Craddock in Harker Heights. Rich told both women that appellant was in custody for murder and that a detention hearing would probably be held later that day.

After completing the juvenile intake procedure, Rich turned appellant over to Morris and Kahlstrom for questioning. *See* Tex. Fam. Code Ann. ' 52.04(b) (West Supp. 2002). Morris testified that after he and Kahlstrom reentered the conference room, AI advised him of his rights using the Miranda card. . . . And we basically told Mr. Horton that we knew what had happened to [the victim], and he cried and told us his side of the story.@

Justice of the Peace Frances Porter arrived at the jail after appellant made his oral statement to the officers. She went to the investigators= office where she met appellant and, with no one else present,

**3**

administered the prescribed juvenile warnings.[2] Tex. Fam. Code Ann. ' 51.095(a)(1)(A) (West Supp. 2002). Judge Porter=s Amagistrate=s juvenile warning@ was signed by appellant at 4:23 a.m. The judge then left the investigators= office and Kahlstrom returned. At this point, appellant gave Kahlstrom the written confession that was the subject of the motion to suppress. After the statement was typed, Judge Porter returned to the room and questioned appellant to determine whether he understood the nature and contents of the statement and was acting voluntarily. Appellant signed the statement in the judge=s presence at 5:22 a.m. Judge Porter signed her Amagistrate=s juvenile verification and certification form@ at 5:35 a.m.

Craddock testified that the officers told her that appellant would not be questioned until he was taken to the juvenile detention center in Killeen. She said she told the officers that she wanted to be present for any questioning.

Appellant testified that he had been Ahuffing@ gasoline on the night he was taken into custody. He said that he was not advised of his rights either at Coffey=s residence or at the sheriff=s office before he made his oral statement. Appellant claimed that he would not have made the oral statement had he been advised of his rights. Appellant initially claimed that he was not advised of his rights by Judge Porter until after he gave the written statement, but he later said that he may have met with the magistrate before the statement was given.

---

[2] It is not clear from the record when appellant was taken from the conference room to the investigators= office.

*Discussion*

By his first point of error, appellant contends his written statement should have been suppressed because neither of the officers who took him into custody notified his parent or custodian as required by law. A person taking a child into custody must promptly notify the child=s parent, guardian, or custodian, and explain the reason for this action. Tex. Fam. Code Ann. ' 52.02(b)(1) (West Supp. 2002). The failure to comply with the section 52.02(b) notice requirement will render inadmissible any subsequent statement by the child obtained as a result of the statutory violation. *Gonzales v. State*, 67 S.W.3d 910, 913 (Tex. Crim. App. 2002).

Appellant argues that section 52.02(b) was violated because neither Morris nor Kahlstrom, the two officers who took him into custody, personally notified either Craddock or his mother. Instead, the testimony shows that moments after appellant was taken into custody, Sheriff Morris called the officers at Craddock=s residence and told them that appellant was in custody. These officers, Cummings and Whitis, in turn told Craddock that appellant was in custody for murder. Appellant cites no authority holding that the statutory notice may not be given in the manner shown here. It would unreasonably elevate form over substance to hold that section 52.02(b) was not satisfied merely because the required notice was not *personally* given by Morris, but by a second officer acting on Morris=s behalf. Because we conclude that appellant=s custodian was properly notified in accord with section 52.02(b), we need not decide whether the later notice to appellant=s mother was adequate. Point of error one is overruled.

Next, appellant asserts that his written statement should have been suppressed because it was tainted by his earlier oral statement. It is undisputed that the earlier, unrecorded oral statement was not

**5**

admissible. *See* Tex. Fam. Code Ann. ' 51.095(a)(5) (West Supp. 2002). Relying on what has been called the Acat-out-of-the-bag@ theory, appellant argues that the psychological pressure of the oral confession, which he was not told could not be used against him, broke his resolve to remain silent and rendered the subsequent written statement involuntary under the Due Process Clause. *See Griffin v. State*, 765 S.W.2d 422, 428 (Tex. Crim. App. 1989); *In re R.J.H.*, 28 S.W.3d 250, 252 (Tex. App.CAustin 2000, pet. granted); U.S. Const. amend. XIV.

Making a confession under circumstances that preclude its use does not perpetually disable the confessor from making a usable one after those circumstances have been removed. *Griffin*, 765 S.W.2d at 428 (quoting *United States v. Bayer*, 331 U.S. 532, 541 (1947)). It has never been held that the psychological impact of the voluntary disclosure of a guilty secret qualifies as State compulsion or compromises the voluntariness of a subsequent informed waiver of the right to remain silent. *Id*. at 429 (quoting *Oregon v. Elstad*, 470 U.S. 298, 312 (1985)). The effect of giving a statutorily inadmissible statement on the voluntariness of a subsequent statement is determined from the totality of the circumstances, with the State bearing the burden of proving voluntariness by a preponderance of the evidence. *Id*. at 429-30; *In re J.T.H.*, 779 S.W.2d 954, 958 (Tex. App.CAustin 1989, no writ).

Morris and Kahlstrom testified that appellant was advised of his *Miranda* rights both at the time he was taken into custody and immediately before he gave his oral statement. Although appellant denied this in his own testimony, we defer to the district court=s implicit finding that the *Miranda* warnings were given. Appellant does not otherwise contend that the oral statement was involuntary. Thus, the inadmissibility of the oral confession resulted solely from alleged statutory noncompliance.

**6**

Judge Porter testified without contradiction that she fully admonished appellant before he made the written statement, that appellant appeared to understand the nature of the statement, and that he voluntarily signed the statement in her presence. Appellant does not dispute that the statutory requisites for the admission of the written statement were satisfied. *See* Tex. Fam. Code Ann. ' 51.095(a)(1) (West Supp. 2002). Appellant did not testify or offer other evidence that he would not have given the written statement had he not previously made the oral confession.

*R.J.H.*, on which appellant relies, is distinguishable. In that case, a juvenile gave a written custodial statement, later determined to be inadmissible, implicating himself and another person in a burglary. *R.J.H.*, 28 S.W.3d at 251. The juvenile subsequently made several noncustodial oral statements to the police seeking to exonerate the other person and to accept sole responsibility for the burglary. *Id*. Finding a Adirect causal connection@ between the juvenile=s inadmissible written statement and the later oral statements, this Court concluded that the earlier statement had tainted the later statements and rendered them involuntary under the Due Process Clause. *Id*. at 254. The record now before us does not reflect a causal connection between appellant=s inadmissible oral statement and his later written statement. In fact, on substantially similar records, both the court of criminal appeals and this Court have upheld the admission of a written statement given by a juvenile who had earlier given an inadmissible oral statement. *See Griffin*, 765 S.W.2d at 430-31; *J.T.H.*, 779 S.W.2d at 958-59.

We hold that the State sustained its burden of proving that appellant=s written statement was voluntary. Point of error two is overruled.

In his third point of error, appellant contends his written statement should have been suppressed because the sheriff=s conference room in which he gave his oral statement was not a designated juvenile processing office. *See* Tex. Fam. Code Ann. ' 52.025(a) (West Supp. 2002) (juvenile board may designate office or room for temporary detention of child taken into custody). A child who is taken into custody may be detained in a juvenile processing office for up to six hours. *Id.* ' 52.025(d). A juvenile processing office may be used to receive a statement from the child. *Id.* ' 52.025(b).

At the suppression hearing, the State introduced in evidence an order of the Lampasas County Juvenile Board dated April 11, 1996, designating the conference room and investigation office at the Lampasas County Jail as juvenile processing offices. Appellant introduced an order of the board dated September 15, 2000, designating the investigation offices at the county jail and at the Lampasas Police Department, together with the conference room at the county juvenile probation office, as juvenile processing offices. Appellant urges that the September 15, 2000, order superceded the April 11, 1996, order, and therefore the sheriff=s conference room was not a juvenile processing office on the night appellant gave his oral statement.

Assuming that the conference room was not a designated juvenile processing office, no basis for suppressing appellant=s written statement is shown. The failure to promptly take a child to a juvenile processing office or other place specified by Texas Family Code section 52.02(a) does not necessarily render inadmissible any subsequent statement given by the child. *See Comer v. State*, 776 S.W.2d 191, 196 (Tex. Crim. App. 1989); *Gonzales*, 67 S.W.3d at 913; Tex. Fam. Code Ann. ' 52.02(a) (West Supp. 2002). There must be a causal connection between the statutory violation and the

**8**

receipt of the statement. *Gonzales*, 67 S.W.3d at 913; *see* Tex. Code Crim. Proc. Ann. art. 38.23(a) (West Supp. 2002).

Once again, the opinion on which appellant relies is distinguishable. In *Baptist Vie Le v. State*, 993 S.W.2d 650, 653 (Tex. Crim. App. 1999), a juvenile gave a statement while being detained at the police homicide division, which was not a juvenile processing office, juvenile detention facility, or other designated office or official. *Id*. at 654-55. The court concluded that under the circumstances shown, the statement was obtained in violation of the family code and therefore should have been suppressed pursuant to article 38.23(a). *Id*. at 656. In contrast to *Baptist Vie Le*, it is undisputed that appellant=s written statement was taken in a juvenile processing office. The only statement taken in the arguably unapproved location was the earlier oral statement that was not admitted in evidence. Assuming that there was a causal connection between the failure to detain appellant in a designated juvenile processing office and the receipt of appellant=s oral statement, the only alleged connection between the oral statement and the later written statement is the Acat-out-of-the-bag@ theory previously discussed and found inapplicable. There is no showing that the written statement was obtained by reason of the alleged family code violation and hence no basis for excluding the statement from evidence. Point of error three is overruled.

In his fourth point of error, appellant contends his written statement should have been suppressed because he was not taken before a magistrate in the county of his arrest as required by the code of criminal procedure. Tex. Code Crim. Proc. Ann. art. 14.06(a) (West Supp. 2002). Appellant concedes he knows of no authority holding that article 14.06(a) is applicable to juveniles. The court of criminal appeals has stated that issues involving the substantive rights of pretransfer juveniles, such as the legality of a

**9**

detention or a confession, are controlled by the applicable provisions of the family code even when raised in the criminal forum. *Comer*, 776 S.W.2d at 196 (quoting *Griffin*, 765 S.W.2d at 427). In any event, noncompliance with article 14.06(a) will not vitiate an otherwise voluntary confession if the person arrested was properly advised of his *Miranda* rights. *Cantu v. State*, 842 S.W.2d 667, 680 (Tex. Crim. App. 1992). Point of error four is overruled.

In what he designates his fifth point of error, appellant asserts that he was harmed by the errors discussed in points one through four. Because there was no error, further discussion of point five is unnecessary.

The judgment of conviction is affirmed.

_____

Mack Kidd, Justice

Before Justices Kidd, Patterson and Puryear

Affirmed

Filed: May 31, 2002

Publish