In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-02-00065-CR
______________________________


WALTER GERALD ANDERSON, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 6th Judicial District Court
Fannin County, Texas
Trial Court No. 20118


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Chief Justice Morriss


O P I N I O N

            When Walter Gerald Anderson drew the chrome, automatic pistol and ordered taxi cab
driver, Darin Barnett, to drive Anderson and his two companions to Utah, Barnett later said the sight
of the gun, "Scared me stiff." A Fannin County jury found Anderson guilty of the aggravated
kidnapping of Barnett, as charged in the indictment. See Tex. Pen. Code Ann. § 20.04 (Vernon
2003). The trial court sentenced Anderson to twenty-five years' imprisonment in accordance with
the jury's recommendation. At trial, Anderson, charged with aggravated kidnapping, had requested
a charge on unlawful restraint as a lesser-included offense. On appeal, Anderson contends the trial
court erred by failing to give that lesser-included offense charge.
            A trial court should honor a criminal defendant's request that the jury be instructed on a
lesser-included offense if (1) the lesser offense is "included within the proof necessary to establish
the offense charged," and (2) there is "some evidence in the record that if the defendant is guilty, he
is guilty only of the lesser offense." Royster v. State, 622 S.W.2d 442, 446 (Tex. Crim. App. [Panel
Op.] 1981); see Harner v. State, 997 S.W.2d 695, 702 (Tex. App.—Texarkana 1999, no pet.).
            A person commits the offense of kidnapping if the person "intentionally or knowingly
abducts another person." Tex. Pen. Code Ann. § 20.03 (Vernon 2003). A person commits the
offense of aggravated kidnapping if the person uses or exhibits a deadly weapon during the
commission of a kidnapping. Tex. Pen. Code Ann. § 20.04(b). As used in Chapter 20 of the Texas
Penal Code, the term "abduct" means to restrain a person with intent to prevent the person's
liberation by either (1) secreting or holding the victim in a place where the victim is not likely to be
found, or (2) by using or threatening to use deadly force. Tex. Pen. Code Ann. § 20.01(2) (Vernon
Supp. 2004).


 Since there is no suggestion that Anderson secreted Barnett, held him where he was
not likely to be found, or actually used deadly force against him, the factual issue was whether he
threatened to use deadly force.
            A person commits the offense of unlawful restraint if the person intentionally or knowingly
restrains another person. Tex. Pen. Code Ann. § 20.02(a) (Vernon 2003). Chapter 20 of the Texas
Penal Code defines "restrain" as "restrict[ing] a person's movements without consent, so as to
interfere substantially with the person's liberty, by moving the person from one place to another or
by confining the person." Tex. Pen. Code Ann. § 20.01(1). Restraint is accomplished without
consent if the actor uses deception, intimidation, or force. Id. Since there is no suggestion of
deception in this instance, the factual issue would have been whether Anderson used intimidation
or force.
            Under the Texas Penal Code, both restraint and abduction require the restriction of the
victim's movements. The statutory distinction between "abduct" and "restrain" appears to be that the
former requires the additional proof of either secreting the victim, holding the victim in a place
where the victim is not likely to be found, or by using or threatening to use deadly force. See Tex.
Pen. Code Ann. § 20.01(2). In this case, whether Anderson committed aggravated kidnapping or
the lesser-included offense of unlawful restraint boiled down to whether, on one hand, Anderson
threatened to use deadly force or, on the other, he used intimidation or force.
            Unlawful restraint is a lesser-included offense of aggravated kidnapping. Schweinle v. State,
915 S.W.2d 17, 19 (Tex. Crim. App. 1996);


 Harner, 997 S.W.2d at 702. Accordingly, Anderson
has satisfied the first prong of the Royster test. The question remaining is whether a reasonable jury,
looking at all the evidence, could have found the evidence established Anderson's guilt of only
unlawful restraint, to the exclusion of the aggravated kidnapping charge, as required under the
second prong of the Royster test.



            In applying Royster's second prong, "the trial court should make a determination as to
whether the evidence of the lesser offense would be sufficient for a jury rationally to find that the
defendant is guilty only of that offense and not the greater offense." Harner, 997 S.W.2d at 702
(citing Rousseau v. State, 855 S.W.2d 666, 673 (Tex. Crim. App. 1993)). "In determining whether
the trial court erred in failing to give a charge on a lesser included offense, all of the evidence must
be considered." Id.; (referencing Havard v. State, 800 S.W.2d 195, 216 (Tex. Crim. App. 1989) (op.
on reh'g)). "A jury, as trier of fact, is entitled to believe all or part of the conflicting testimony
proffered and introduced by either side." Id. (citing Bignall v. State, 887 S.W.2d 21, 24 (Tex. Crim.
App. 1994)). "Furthermore, a jury can selectively believe all or part of the evidence admitted at
trial." Id. (citing Bignall, 887 S.W.2d at 24). 
The Court of Criminal Appeals has determined that it is not enough that the jury may
disbelieve crucial evidence pertaining to the greater offense; there must be some
evidence directly germane to a lesser included offense for the fact finder to consider
before an instruction on a lesser included offense is warranted. 

Id. (citing Bignall, 887 S.W.2d at 24).
 
            In the case now before us, for the trial court to have erred, there must be some evidence
directly germane to an unlawful restraint offense for such an instruction to be warranted. Cf. Harner,
997 S.W.2d at 702. More specifically, because the trial court's charge for aggravated kidnapping
authorized Anderson's conviction only if the jury found Anderson abducted Barnett by threatening
deadly force, there must be some evidence to suggest Anderson unlawfully restrained Barnett by
restricting Barnett's movements through force or intimidation, by employing a means other than by
threatening to use deadly force. See Tex. Pen. Code Ann. § 20.01(1)(A) (defining restraint as being
accomplished without consent if it is through force, intimidation, or deception); Tex. Pen. Code
Ann. § 20.002(a) (defining unlawful restraint). This distinction between the hypothetical proof
necessary for unlawful restraint (as suggested by Anderson's brief on appeal) and actual proof
required for aggravated kidnapping (as defined in this case by the trial court's jury instructions) is
critical. If the jury did not believe beyond a reasonable doubt that Anderson accomplished the
alleged kidnapping by threatening to use deadly force, the jury would, by following the trial court's
instructions, be required to acquit Anderson of aggravated kidnapping. For a charge of unlawful
restraint to have been submitted, however, there would have to be evidence that Anderson restrained
Barnett's liberty through some means other than by threatening to use deadly force.
            Anderson presents four areas of testimony he suggests would permit a jury to rationally
conclude he would be guilty only of unlawful restraint: (a) the testimony of codefendant Enrique
Garza regarding whether Anderson actually used the gun in a threatening manner, (b) whether the
phrase "we are going to Utah" meant the three codefendants or whether the phrase meant the three
codefendants plus Barnett, (c) the conflict in the evidence regarding whether Anderson prevented
Barnett from answering the cell phone, and (d) whether the jury could have found Anderson merely
restrained Barnett's liberty without abducting him. 
            a. Displaying the gun
            Barnett testified at trial that Anderson, Garza, and a third companion got into Barnett's taxi
and asked Barnett to take them from Lucky's Food Store to Honey Grove. The men eventually
changed their minds and asked Barnett to take them to the Red River, located north of Bonham,
Texas, the town in which they were currently located. According to Barnett, as Barnett drove toward
the river, Anderson drew a gun and ordered Barnett to drive the three men to Utah. Barnett
described Anderson's gun as a chrome, automatic pistol, and said the sight of it, "Scared me stiff." 
Barnett further testified it was the sight of Anderson's gun that caused him to feel restrained. In fact,
Barnett said he did not feel it was safe to go to the police until after Anderson had climbed into a car
Barnett eventually sold the men, because it was not until that moment that Anderson stopped
pointing the gun at Barnett. 
            Testifying for Anderson, Garza claimed Anderson told Barnett not to be nervous or scared
as Anderson removed the gun from his side, and that Anderson was only putting the gun in his lap
because it was hurting his side. In response to the State's question of whether Garza saw Anderson
point the gun at Barnett, Garza responded he "didn't really see [the gun]." Garza also admitted that
he did not see Anderson holding the gun after he pulled it out and that he did not know whether 
Anderson had pointed the gun at Barnett. More importantly, Garza testified that he could not tell
whether Barnett's attitude and demeanor changed after Anderson took out the gun, nor could Garza
hear or remember much of what was said between Anderson and Barnett. Anderson contends
Garza's testimony, if believed by the jury, would negate the element of the aggravated kidnapping
charge requiring Anderson to have used or exhibited a deadly weapon during the course of a
kidnapping, and thereby entitle Anderson to a charge on unlawful restraint. 
            Garza's testimony does not support the proposition now advanced by Anderson. Garza's
testimony confirmed Anderson, at a minimum, "exhibited" a deadly weapon when, according to
Garza, Anderson placed the gun in his lap. More importantly to our resolution of this issue,
however, was Garza's express denial of knowing how or if Anderson brandished the gun in a
threatening manner at any later point during the taxi ride. As such, Garza's lack of knowledge
forecloses his testimony as a source of evidence that discredits Barnett's claim that he felt threatened
with deadly force when Anderson pointed the gun at him. Moreover, Garza did not testify that
Anderson restrained Barnett's liberty in a manner different than threatening Barnett with a gun, such
as the use of physical restraint or by using or threatening to use nondeadly force. Barnett did not
testify he felt restrained by a threat of the use of nondeadly force, such as would be required to
support a conviction for unlawful restraint under the facts of this case. Anderson's appellate brief
suggests the jury could have concluded Barnett felt "that it was Mr. Anderson's size that intimidate
[sic] Mr. Barnett." There is, however, no evidence in the record to support such conjecture, such as
a physical description of either Anderson or Barnett or of any threat or intimidation other than the
display of the gun. Accordingly, there is no evidence that Anderson, if guilty, is guilty only of the
lesser-included offense of unlawful restraint.
            b. "We're going to Utah"
            Anderson also points to a portion of Barnett's testimony as a source of evidence from which
Anderson contends a jury could have found him guilty only of unlawful restraint. Barnett told the
jury Anderson pulled out the gun and told Barnett "we [are] going to go to Utah and there [aren't]
going to be any problems." Anderson contends the term "we" in that alleged statement could have
meant that only Anderson and the two codefendants (rather than Anderson, the two codefendants,
and Barnett) were going to Utah. At trial, Anderson did not make this argument before the trial court
as a basis for a lesser-included charge. 
            There was, however, no evidence anyone other than Barnett drove the taxi or that anyone
asked Barnett to give the keys to someone else, who would then drive. Barnett and Garza both
testified Barnett drove the taxi. Garza said he did not remember whether he, Anderson, and a third
codefendant conspired before the alleged incident to kidnap Barnett, nor did Garza say the group's
(or Anderson's) intent was to merely steal the vehicle and drive themselves to Utah. Accordingly,
we do not find a lesser-included charge was required by Anderson's semantic interpretation of
Barnett's testimony when that interpretation was not consistent with any of the evidence and was not
proffered by counsel in the trial court. See Tex. R. App. P. 33.1(a)(1)(A) (preservation of error
requires sufficient specificity). 
            c. Preventing the use of the cell phone
            Anderson also suggests a jury could have found him guilty of unlawfully restraining Barnett
based on Barnett's testimony that Anderson would not allow Barnett to answer his cell phone. 
Barnett testified his cell phone rang five times before Anderson finally allowed Barnett to answer
it. Even if Anderson prevented Barnett's use of the cell phone, such evidence does not show
Anderson also restricted Barnett's liberty by moving Barnett from one place to another or by
interfering "substantially" with Barnett's liberty without the victim's consent, as would be required
by the statute. See Tex. Pen. Code Ann. § 20.02(b). Thus, this evidence would not allow a jury to
conclude Anderson was guilty only of unlawful restraint.
 
            d. Restraint without abduction?
            Finally, Anderson contends the jury could have disbelieved Barnett's testimony that Anderson
threatened Barnett with the gun, thereby leading to the conclusion that the State failed to prove
Anderson abducted Barnett through the use or exhibition of a deadly weapon during the commission
of the offense. See Tex. Pen. Code Ann. § 20.04(b). Then, according to Anderson's appellate
argument, if the jury found Anderson had merely restrained Barnett, but did not also find Anderson
held Barnett in a place where he was unlikely to have been found, then Anderson would have been
guilty only of the lesser-included offense of unlawful restraint. We disagree.
            First, Anderson erroneously assumes the jury was authorized to convict him of aggravated
kidnapping if the jury found he had abducted Barnett by secreting or holding him in a place where
he was not likely to be found. The jury instructions, however, authorized Anderson's conviction only
if the jury believed Barnett's restraint was accomplished through the use or threat of using deadly
force. 
            Second, Anderson's argument does not relate to the charge of unlawful restraint because it
fails to indicate what evidence suggested Anderson accomplished the movement or confinement of
Barnett using force other than through the threat of deadly force. Such information is exactly the
evidence that would be needed to satisfy Royster's second prong. For example, Garza did not testify
Anderson threatened Barnett with physical, nondeadly violence. Had Garza so testified, that would
be evidence from which a jury could have concluded Anderson was guilty only of the offense of
unlawful restraint. Garza, however, testified that he did not hear Anderson threaten Barnett and that
Anderson did not display the gun in a threatening manner. Thus, Garza's testimony would not
support the conclusion Anderson was guilty only of unlawful restraint. Anderson's argument "relies
on speculation, which does not affirmatively raise the issue or require an instruction on the lesser
included offense[] of . . . unlawful restraint." Harner, 997 S.W.2d at 702–03 (referencing Bignall,
887 S.W.2d at 24). 
            We overrule Anderson's sole point of error and affirm the trial court's judgment.



                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          December 4, 2003
Date Decided:             December 18, 2003

Publish



 a previous oral statement
which was inadmissible pursuant to Article 38.22 of the Texas Code of Criminal Procedure, thereby
making his written confession 'fruit of the poisonous tree.'"
            Whether Firth complains of a failure to provide him warnings in compliance with Miranda
or  a  failure  to  record  the  oral  statement  pursuant  to  Tex. Code Crim. Proc. Ann. art. 38.22,
§ 3(a)(1),


 we hold that any noncompliance with Article 38.22 did not taint the subsequent written
statement. That is true because (a) officers complied with Miranda and (b) noncompliance with
Article 38.22's statutory component does not require exclusion of a subsequent statement.
            (a)       The Officers Complied with Miranda
            Under our standard of review, we afford a great deal of deference to the trial court's findings
when those findings turn on issues of credibility. Here, both officers testified that Firth was warned
of his constitutional rights before the August 11 questioning and that Firth waived those rights.
            We defer to the trial court's finding that Deputy Huggins properly warned Firth in compliance
with Miranda and Article 38.22's codification of Miranda. The uncontroverted evidence in the
record supports this conclusion. To the extent Firth's point of error raises noncompliance with
Miranda and Section 3(a)(2) of Article 38.22, we overrule those contentions.



            (b)       Noncompliance with Article 38.22's Statutory Component Does Not Require
Exclusion of a Subsequent Statement

            We next address Firth's point of error as one raising only the failure of the officers to comply
with the statutory requirements of Article 38.22, Section 3. Absent an exception, the failure to
record Firth's oral statement made August 11 would render Firth's oral statement inadmissible. Such
a failure would not, however, implicate Firth's constitutional rights against self-incrimination. It
follows, as well, that such a failure would have no bearing on the admissibility of any subsequent
written statement.
            The United States Constitution does not require the electronic recording of oral statements
made in response to custodial interrogation. See United States v. Yunis, 859 F.2d 953, 961 (D.C. Cir.
1988); Hawes v. State, 125 S.W.3d 535, 541 (Tex. App.—Houston [1st Dist.] 2002, no pet.). The
Texas Constitution also does not require recording oral statements. Hawes, 125 S.W.3d at 541.
            Admission of statements in violation of the recording requirement of Article 38.22 is
nonconstitutional error. Nonn v. State, 117 S.W.3d 874, 879–80 (Tex. Crim. App. 2003); Hawes,
125 S.W.3d at 541; see Hernandez v. State, 114 S.W.3d 58, 65 (Tex. App.—Fort Worth 2003, pet.
ref'd); Davidson v. State, 42 S.W.3d 165, 167 (Tex. App.—Fort Worth 2001, pet. ref'd). Because
errors committed with respect to the recording requirements of Article 38.22 do not implicate a
defendant's constitutional rights, the effect of any such error would have been limited to the oral
statement alone. The "fruit of the poisonous tree" doctrine is a constitutional doctrine and does not
apply to statutory noncompliance. No taint would follow to attach to a later statement lawfully
taken.
            The Austin Court of Appeals applied such a distinction in a recent case with similar facts
concerning an appellant's statements to officers. Millslagle v. State, 150 S.W.3d 781, 784 (Tex.
App.—Austin 2004, pet. dism'd). In Millslagle, the court treated the issue strictly in terms of
statutory application and held the failure to record appellant's oral statements did not render his later
written statement inadmissible. Id. Millslagle contended that his written statement should not have
been admitted because the interrogation that immediately preceded it was not recorded. The Austin
court noted that Article 38.22 did not "speak directly to his contention." Id. Although the failure
to record appellant's oral statements to officers did render those oral statements inadmissible under
Section 3 of the statute, the court pointed out that Section 3 does not govern the admissibility of
Millslagle's subsequent written statement. The admissibility of his written custodial statement was
governed by Section 2 of Article 38.22, and requirements of Section 2 were clearly satisfied. Id.
            The court went on to discuss its opinion in Horton v. State, 78 S.W.3d 701 (Tex.
App.—Austin 2002, pet. ref'd), in which it similarly upheld the admission of a written statement
made immediately after the accused made a voluntary, but unrecorded, oral statement. The court
dispelled Millslagle's misunderstanding of its holding in Horton, reiterating that the written
statement was not tainted by the inadmissible oral statement. Id.
            We conclude Firth's contention fails because his unrecorded oral statement was admissible
under Article 38.22, Section 3(c) of the Texas Code of Criminal Procedure. The factual assertions
he made in that statement were later found to be true and tended to show his guilt. Even if that
conclusion is incorrect, the officers' noncompliance with respect to Firth's oral statement did not taint
his subsequent written confession. The trial court properly admitted the written statement. We
affirm the trial court's judgment.
 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          March 29, 2005
Date Decided:             June 23, 2005

Do Not Publish