# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00560-CR

**Randall Millslagle, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT
NO. CR-02-650, HONORABLE GARY L. STEEL, JUDGE PRESIDING**

## O P I N I O N

A jury found appellant Randall Millslagle guilty of two counts of indecency with a child by contact and one count of aggravated sexual assault of a child. *See* Tex. Pen. Code Ann. § 21.11 (West 2003), § 22.021 (West Supp. 2005). After finding that appellant was a habitual offender, the jury assessed a twenty-five-year prison term for each of the indecency counts and a twenty-eight-and-one-half-year term for the aggravated sexual assault. In thirteen points of error, appellant contends that a written statement he gave to the police should not have been admitted in evidence and that the court improperly cumulated the sentences. We will overrule these contentions and affirm the convictions.

Appellant unsuccessfully moved to suppress a written custodial statement he gave to San Marcos police officer Scott Johnson. In the statement, appellant described an incident in which

the complainant masturbated him. Appellant asserts that he gave the statement after being threatened by the police and after his request for counsel was denied. *See* U.S. Const. amends. V, VI; Tex. Const. art. I, § 10; Tex. Code Crim. Proc. Ann. art. 1.05 (West 1977), arts. 38.22, .23 (West Supp. 2005).

Johnson first interviewed appellant on August 29, 2002, two days after his arrest. During this interview, which was videotaped but not admitted in evidence at trial, appellant denied the accusations made by the complainant and agreed to take a polygraph examination. On September 2, Johnson took appellant to a private room in the jail infirmary where the examination was to be administered by Sergeant Walt Goodson of the Texas Department of Public Safety.

Goodson testified at the suppression hearing that, as a routine part of the polygraph examination process, he conducted a pretest interview of appellant. Before this interview began, Goodson advised appellant of his rights orally and in writing, and appellant signed a written waiver of his rights that was admitted in evidence at the hearing. *See* Tex. Code Crim. Proc. Ann. art. 38.22, § 2. During this interview with Goodson, appellant admitted for the first time that there had been sexual contact between himself and the complainant. Goodson told Johnson, who was waiting outside the room, that appellant was prepared to give a partial confession.

Johnson testified that he entered the room and questioned appellant about what he had told Goodson. After appellant admitted an act of sexual contact with the complainant, Johnson asked appellant to reduce his statement to writing. Appellant did so, on a police form containing a preprinted waiver of rights. It is this statement that appellant asserts was erroneously admitted in

2

evidence. After the statement was signed, Goodson returned to the room and administered the polygraph test.

Both Johnson and Goodson testified that appellant never asked to speak to a lawyer and never indicated that he wished to invoke his right to remain silent. Johnson also testified that no threats or promises were made to appellant. The officers' testimony was corroborated by the two written waivers of rights, one signed by appellant at 9:45 a.m. on September 2 and the other printed at the top of the confession form on which, beginning at 11:00 a.m. that same day, appellant wrote the statement at issue.

In his own testimony, appellant conceded that he agreed to take a polygraph test. He said, however, that Goodson did not conduct a pretest interview. Instead, Goodson merely explained the procedure and then administered the test. According to appellant, Goodson told him after the test was completed that "there were a couple of problems with a couple of the things that I said." Johnson then entered the room and "started insinuating things and started calling me a liar. And that's when I told him—I says, 'Look. I'm not comfortable with this. I thought it was just a polygraph. I want a lawyer." Appellant testified that Johnson told him he "didn't need a lawyer" and that "if he has any chance at all to get me the max, he was going to do it." Appellant repeated his request for a lawyer, but was again rebuffed by Johnson. Appellant said, "Well, I told him that I didn't want to talk anymore. He just kept going and asking me questions. And he—he got mad and stormed out."

According to appellant, Goodson returned to the room and told him that Johnson "was pissed" and that "he is not the guy to make mad, that he is going to try to get the maximum on me."

3

Appellant said that by this point, "I'm truly scared." He added, "I was crying. I was already crying. He kept just threatening me, telling me all of these things." The officers continued to take turns questioning appellant, "like a tag team," until appellant agreed to make a statement. Appellant testified that neither officer ever advised him of his rights and that his requests for an attorney were ignored.

When we review a trial court's ruling on a motion to suppress a confession, we apply the standard of review enunciated in *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). *See Maestas v. State*, 987 S.W.2d 59, 62 (Tex. Crim. App. 1999). That is, we defer to the trial court's factual determinations but review de novo the court's application of the law to the facts. *Guzman*, 955 S.W.2d at 89.

Appellant's challenges to the admission of his written statement are predicated on the assumption that his testimony at the suppression hearing was true and uncontradicted. But in fact, the two officers testified to a completely different version of the relevant events. As the trier of fact at the suppression hearing, the district court had the discretion to believe the officers when they testified that appellant did not ask for a lawyer and that no threats were made to induce the confession, and to disbelieve appellant's testimony to the contrary. On appeal, we defer to the trial court's credibility determinations.

Viewing the record from the suppression hearing in the light most favorable to the court's ruling, we hold that the district court did not err by refusing to suppress appellant's written confession on the ground that his request for counsel was denied. We also hold that the court did

4

not err by refusing to suppress the confession on the ground that it was coerced and involuntary. Points of error one through ten are overruled.

Next, appellant contends that his written statement should not have been admitted because the interrogation that immediately preceded it was not recorded. Appellant cites article 38.22, but this statute does not speak directly to his contention. Although the failure to record appellant's oral statements to Johnson and Goodson on the morning of September 2 rendered those oral statements inadmissible under section 3 of the statute, that section does not govern the admissibility of appellant's subsequent written statement. Tex. Code Crim. Proc. Ann. art. 38.22, § 3. The admissibility of appellant's written custodial statement was governed by article 38.22, section 2, which was clearly satisfied. *Id*. art. 38.22, § 2.

Appellant refers us to our opinion in *Horton v. State*, 78 S.W.3d 701 (Tex. App.—Austin 2002, pet. ref'd). There, as here, the defendant gave a voluntary oral statement that was inadmissible because it was not recorded. *Id*. at 705. Immediately thereafter, the defendant gave a written statement that, like appellant's written statement, satisfied the statutory requisites. *Id*. at 706. Contrary to appellant's apparent belief, this Court did not hold in *Horton* that the written statement was tainted by the inadmissible oral statement. In fact, we upheld the admission of the written statement. *Id*.

Appellant also cites the opinion in *Urias v. State*, 104 S.W.3d 578 (Tex. App.—El Paso 2003, pet. granted). In that case, the court held that an oral custodial statement should not have been admitted because the record showed that the police did not scrupulously honor the defendant's

5

request that the questioning stop. *Id.* at 587. This opinion offers no support to appellant's argument under this point of error.

We hold that under the circumstances shown here, the failure to record appellant's oral statements did not render inadmissible his later written statement. Point of error eleven is overruled.

In his remaining points of error, appellant contends the district court erred by cumulating his sentence for aggravated sexual assault with the concurrent sentences imposed for indecency with a child. Appellant concedes that the cumulation order was authorized by the penal code. *See* Tex. Pen. Code Ann. § 3.03(b)(2)(a) (West 2003). He argues, however, that the order violated his due process rights because there was no jury finding beyond a reasonable doubt that the offenses arose out of the same criminal episode. He further complains that he was not given notice of the State's intention to seek the "same criminal transaction" finding. He relies on the holding in *Apprendi v. New Jersey*: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and found beyond a reasonable doubt." 530 U.S. 466, 490 (2000).

Appellant's arguments are based on a misreading of section 3.03. Texas trial courts have the discretion to order cumulative sentences in virtually every case. *See* Tex. Code Crim. Proc. Ann. art. 42.08(a) (West Supp. 2005). The principal exception to this rule is found in penal code section 3.03(a), which provides that when a defendant is found guilty at a single trial of more than one offense arising out of the same criminal transaction, the sentences for each offense must run concurrently. Tex. Pen. Code Ann. § 3.03(a) (West 2003). Section 3.03(b)(2)(A) creates an

6

exception to this exception; that is, it exempts certain offenses, including indecency with a child and aggravated sexual assault of a child, from the application of section 3.03(a). Tex. Pen. Code Ann. 3.03(b)(2)(A). Because of the nature of the offenses for which appellant was convicted, the trial court was authorized to cumulate the sentences whether or not the offenses arose out of the same criminal episode.

In addition, the court's cumulation order did not have the effect of increasing appellant's punishment beyond the statutory maximum for any of the offenses for which he was convicted. The jury found beyond a reasonable doubt that appellant had two previous felony convictions, the second of which was for a crime committed after the earlier conviction became final. *See* Tex. Pen. Code Ann. § 12.42(d) (West Supp. 2005). Because appellant was determined to be a habitual offender, he was subject to a maximum prison term of ninety-nine years or life for each offense. *Id.* The cumulative total of appellant's sentences is fifty-three and one-half years. Points of error twelve and thirteen are overruled.

The judgments of conviction are affirmed.

_____

Bob Pemberton, Justice

Before Justices Kidd, B. A. Smith and Pemberton

Affirmed

Filed: September 30, 2004

Publish

7