ESQUIBEL V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-262-CR

PEDRO ANTONIO ESQUIBEL APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I. Introduction

Appellant Pedro Antonio Esquibel appeals from his conviction by a jury for the offense of indecency with a child by contact.  In his sole point, appellant argues that the trial court erred by denying his motion to suppress his statements made to a polygraph examiner.  We affirm.

II. Background Facts

On July 15, 2002, nine-year-old M.V. and her younger brother and sister spent the night at Patsy Gipson’s house to watch movies.  Gipson is appellant’s mother and M.V.’s stepdad’s sister.  Appellant, who lived with Gipson at the time, watched movies with the children and slept with them on a “pallet” on the floor after the movies were over.  According to M.V., appellant began fondling her in the middle of the night.  Appellant also took M.V.’s hand and forced her to fondle him.  The next morning, M.V. told appellant’s sister about the incident.  Appellant’s sister told her mother, who then told M.V.’s mother.  The Arlington Police were notified the next day and began investigating the incident. 

On July 22, 2002 Detective Leddy Fowler interviewed appellant in Detective Fowler’s office.  Appellant told Detective Fowler that he awoke in the middle of the night to find M.V.’s arm on his stomach but that no inappropriate touching occured.  Detective Fowler stopped questioning appellant after he requested to speak to an attorney.  Detective Fowler then spoke to appellant’s mother, who told him that she did not believe the allegations against appellant and that Detective Fowler could schedule a date for appellant to take a polygraph examination.  Detective Fowler scheduled the polygraph for August 5, 2002. 

On August 5, appellant took a polygraph examination.  When the examiner told appellant that his test results were indicative of deception, appellant told the examiner that he had awakened the night of July 15, 2002 with M.V.’s hand near his penis and that because there was seminal discharge present, M.V. must have fondled him while he was sleeping. 

Appellant was charged with two counts of indecency with a child by contact and one count of indecency with a child by exposure.  Appellant filed a motion to suppress his statements, arguing, among other things, that they were not “knowingly, intelligently and voluntarily waived” as prescribed by article 38.22, section 2(a)(4), (5) and section 3 of the Texas Code of Criminal Procedure.  At his pretrial hearing, appellant argued that his statements were given under duress.  The trial court denied appellant’s motion to suppress, finding that section 38.22 did not apply because appellant was not in custody when he made the statements.  Appellant pled not guilty to the charges against him, and a jury found him guilty on one count of indecency with a child by contact.  The jury assessed appellant’s punishment at fifteen years’ confinement. 

III. Motion to Suppress

In his sole point, appellant argues that the trial court erred by denying his motion to suppress his statements made to the polygraph examiner.  Appellant argues that the statements resulted from a custodial interrogation and were not recorded as required by article 38.22 of the code of criminal procedure. 

When reviewing a trial court’s ruling on a motion to suppress a confession, we defer to the trial court on questions of historical fact and on application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor.  
Guzman v. State
, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); 
Millslagle v. State
, 150 S.W.3d 781, 783 (Tex. App.སྭAustin 2004, pet. dism’d).  We review de novo a trial court’s rulings on mixed questions of law and fact that do not turn on credibility and demeanor.  
Guzman
, 955 S.W.3d at 89.  The issue of whether appellant was in custody at the time he made his statements to the polygraph examiner depends on the credibility and demeanor of the witnesses who testified at appellant’s pretrial hearing.  Therefore, we will review the trial court’s ruling for an abuse of discretion.  
See id
.  

According to article 38.22 of the code of criminal procedure, “No oral or sign language statement of an accused made as a result of custodial interrogation shall be admissible against the accused unless: (1) an electronic recording, which may include motion picture, video tape, or other visual recording, is made of the statement.”  
Tex. Code Crim. Proc. Ann.
 art. 38.22, ྷ 3(a) (Vernon 2005).  The State argues that article 38.22 does not apply because appellant was not in custody when he made his statements to the polygraph examiner.  We agree.

A person is in custody for purposes of article 38.22 “only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest.”  
Nenno v. State
, 970 S.W.2d 549, 556 (Tex. Crim. App. 1998),
 overruled on other grounds by State v. Terrazas
, 4 S.W.3d 720, 727 (Tex. Crim. App. 1999).  Merely because an accused is questioned at the police station or submits to and fails a polygraph examination does not necessarily mean the accused is in custody.  
See Dowthitt v. State
, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996).  According to the court of criminal appeals, the following four general situations may constitute custody: 

(1) when the suspect is physically deprived of his freedom of action in any significant way, (2) when a law enforcement officer tells the suspect that he cannot leave, (3) when law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted, and (4) when there is probable cause to arrest and law enforcement officers do not tell the suspect that he is free to leave. 

Id
.  

In the present case, appellant arrived at Detective Fowler’s office on August 5, 2002 and followed Detective Fowler to the polygraph office.  Detective Fowler talked to the polygraph examiner, Bobby Jones, about the background of the case and waited in the lobby while appellant took the polygraph examination.  Detective Fowler testified that appellant was never under arrest and was free to leave at anytime during the examination.   

Before the examination began, appellant signed a waiver form, which stated that the examination was voluntary and that appellant had the right to refuse the examination.  Appellant signed another form that contained a statement of his Miranda warnings.  The second form also contained the following statements:  “I hereby knowingly, intelligently, and voluntarily waive these rights and, not desiring a lawyer, voluntarily choose to [proceed] with the polygraph examination interviews and examination,” and “I Pedro Esquibel, do hereby this date voluntarily and without duress, coercion, unlawful influence or inducement, or promise of reward of clemency or immunity, request an examination on the polygraph.”  Appellant signed his name below each statement. 

Jones administered the test and determined that appellant was not being truthful.  Jones told appellant the results of the test and gave him a chance to explain his performance.  Appellant stated that he awoke the morning of July 15, 2002 with an erection and that M.V. must have fondled him while he was sleeping.  Appellant was then allowed to leave the polygraph office on his own.  Jones testified that appellant never asked for a lawyer, was not handcuffed, and was never told that he was not free to leave. 

Appellant argues that he was in custody when he made the statements to the polygraph examiner because Detective Fowler believed that she had probable cause to arrest appellant and because Detective Fowler never told appellant that he was free to leave.  
See Dowthitt
, 931 S.W.2d at 255.  But according to 
Dowthitt
, this situation does not automatically establish custody.  
Id
.  “[R]ather, custody is established if the manifestation of probable cause, 
combined with other circumstances
, would lead a reasonable person to believe that he is under restraint to the degree associated with an arrest.”  
Id
.  (emphasis added).

In 
Dowthitt
, the defendant voluntarily went to the police station to give a written statement in a murder investigation.  
Id
. at 252.  The police then interrogated the defendant for twelve hours before he admitted to being present when the murders were committed.  
Id
. at 252-53.  During this time, the defendant took and failed a polygraph examination.  
Id
. at 252.  The police accompanied the defendant when he went to the restroom and ignored his requests to speak to his wife.  
Id
. at 252, 254.  The court of criminal appeals held that given the length of the interrogation, the existence of factors involving police control over the defendant, and the defendant’s damaging admission establishing probable cause for arrest, the defendant was in custody when he admitted to being present during the murders.  
Id
. at 257.       

Unlike 
Dowthitt
, appellant was at the polygraph office for only two hours  and was allowed to leave at the end of the examination.  Detective Fowler did not place appellant in handcuffs or tell him that he was not free to leave.  Moreover, appellant signed several forms, in which he stated that he had the right to refuse the examination, that he waived his rights, and that he chose to proceed with the examination.  Under the circumstances, we conclude that appellant was not in custody when he made his statements to the polygraph examiner.  Therefore, article 38.22 does not apply.  We hold that the trial court did not abuse its discretion by denying appellant’s motion to suppress. 

IV. Conclusion

Having overruled appellant’s point, we affirm the trial court’s judgment.
 
 

TERRIE LIVINGSTON

JUSTICE

PANEL A: LIVINGSTON, DAUPHINOT, and WALKER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  August 18, 2005

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.