*136-15*

ORIGINAL

COURT OF CRIMINAL APPEALS OF TEXAS

AUSTIN, TEXAS

RECEIVED IN
COURT OF CRIMINAL APPEALS

APR 17 2015

Abel Acosta, Clerk

NO. PD-0136-15

FILED IN
COURT OF CRIMINAL APPEALS

APR 17 2015

Abel Acosta, Clerk

RONALD GENE GRIZZLE, JR.,

          Petitioner, pro se,

          v.

THE STATE OF TEXAS,

          Respondent

PETITION FOR RULE 68 REVIEW

Ronald Gene Grizzle, Jr.
Prisoner ID 1935380
TDCJ-ID, Polunsky Unit
3872 FM 350 South
Livingston, Texas 77351

NO. PD-0136-15

| | | |
|---|---|---|
| RONALD GENE GRIZZLE, JR., | § | COURT OF CRIMINAL |
| Petitioner, pro se, | § | |
| v. | § | APPEALS OF TEXAS |
| THE STATE OF TEXAS, | § | |
| Respondent | § | AT AUSTIN, TEXAS |

## PETITION FOR RULE 68 REVIEW

UNDERSIGNED per Tex. R. App. P. 68 files for review.

### I. IDENTITY OF JUDGE, PARTIES, AND COUNSEL

Trial Judge......................D. W. Bridewell, Judge
Texas Judicial Dist. Ct. #249
204 South Buffalo
Cleburne, Texas 76033

Appellate Judges................Tom Gray, C.J.; Rex D. Davis
and Al Scoggins, JJ.
Texas Ct. of Appeals No. 10
501 Washington Ave. Room 415
Waco, Texas 76701

Petitioner......................Ronald Gene Grizzle, Jr.
Prisoner ID 1935380
TDCJ-ID, Polunsky Unit
3872 FM 350 South
Livingston, Texas 77351

Trial Defense Counsel...........W. G. Mason, SB# 13158975
P. O. Box 767
Cleburne, Texas 76033

Trial Prosecution Team..........B. Bufkin, SB# 24078284
M. Boyle, SB# 24040556
P. Hable, SB# 24038934
204 South Buffalo, Suite 209
Cleburne, Texas 76033

Appellant's Counsel.............L. E. Rugely, SB# 17383000
16 North Caddo Street
Cleburne, Texas 76031

Appellee's Team.................D. S. Hanna, SB# 08918500
Lindsey Lehrman, SB# 24090228
204 South Buffalo, Suite 209
Cleburne, Texas 76033

## II. TABLE OF CONTENTS

I. Identity of Judge, Parties, and Counsel..................ii

II. Table of Contents.......................................iii

III. Index of Authorities....................................v

IV. Statement Regarding Oral Argument.......................vi

V. Statement of the Case...................................vii

VI. Statement of Procedural history........................viii

VII. Grounds For Review.....................................ix

    A. Ground One [Subject Matter Implicated: Deficiency of Evidence For First Degree Felony Conviction]......ix

    B. Ground Two [Subject Matter Implicated: Seperation of Powers Doctrine]....................................x

VIII. Argument

    A. Preliminary Statement...................................1

    B. Why Review Should Be Granted On Ground One............1

    Ground 1 Submitted.....................................1

        1. THE ELEMENTS OF FIRST DEGREE FELONY APPEAR ON RECORD TO ARISE IN AND FROM PRE-INDICTMENT REPORT OF QUESTIONABLE RELIABILITY..................2

        2. REBECCA SULLIVAN'S REPORT OF PHYSICAL EXAM HAD NO "REASONABLY PERTINENT" DIAGNOSTIC OR TREATMENT VALUE AND SHOULD NOT BE GRANTED "TRUSTWORTHINESS" (VIZ., PROBATIVE VALUE) AS HEARSAY EXCEPTION PER TEXAS RULES OF EVIDENCE 803(4).....................5

        3. ON DIRECT EXAMINATION, THE "COMPLAINANT" TEEN-AGE WITNESS, CONSISTENT WITH HER OUT-OF-COURT STATEMENT TO REBECCA SULLIVAN, BELIES AND IMPEACHES THE PRESUMPTION THAT ELEMENTS OF FIRST DEGREE FELONY EXIST—EXCULPATING THE ACCUSED.......6

    C. Why Review Should Be Granted On Ground Two...........10

    Ground Two Submitted..................................10

        1. THE SEPERATION OF POWERS DOCTRINE DOES NOT ALLOW THE TEXAS LEGISLATURE TO BY STATUTE PERMIT THE EXECUTIVE TO USURP THE JUDICIAL FACT-FINDING POWER THAT AFFECTS SUBSTANTIAL RIGHTS..............10

2. THE TEXAS JUDICIARY IS FORCED BY LEGISLATIVE
MANDATE TO SURRENDER JUDICIAL FACT-FINDING POWER
BY PENAL CODE § 3.01...............................11

3. THIS CASE IS AN APPROPRIATE VEHICLE FOR
CORRECTION OF THE SEPERATION OF POWERS
VIOLATION THE LEGISLATURE EFFECTED BY WORDS IN
PENAL CODE § 3.01, AND TO RESTORE TO THE
JUDICIARY THE FACT-FINDING POWER IMPROPERLY
LEGISLATED TO THE EXECUTIVE......................12

D. Summation...........................................15

IX. Prayer For Relief....................................15

X. Proof of Service (Certificate of Service)...............16

XI. Appendix (Opinion of Ct. of Appeals)...................17

## III. INDEX OF AUTHORITIES

I. Federal Authorities

    A. Constitution of the United States

        Amendment VI.................................1, 6, 12, 14, 15

        Amendment XIV........................1, 6, 11, 12, 14, 15

    B. Supreme Court of the United States Case Law

        Aprendi v. United States,
        530 U.S. 466 (2000).................x, 10, 13, 14, 15

        Oregon v. Ice,
        129 S. Ct. 711 (2009).................x, 10, 13, 14, 15

        Stone v. Powell,
        428 U.S. 465 (1979)......................................15

II. Texas Authorities

    A. Constitution of the State of Texas

        Article II, Section I.............................10, 11

    B. Texas Penal Code

        Section 3.01.....................x, 10, 11, 12, 14, 15
        Section 3.01(a)-(b)..................................11
        Section 3.03.................................11, 14, 15
        Section 15.01(d)......................................8
        Section 22.021.....................................ix, 1

    C. Texas Rules of Evidence

        Rule 103(d).........................................5-6
        Rule 803(4)...........................................5

    D. Texas Rules of Appellate Procedure

        Rule 68...............................................ii

    E. Texas Case Law

        Gohring v. State, 967 S.W.2d 459
        (Tex.App.—Beaumont 1998).............................5

        Laporte v. State, 840 S.W.2d 246
        (Tex.Crim.App.1992)..................................12

        Meshell v. State, 739 S.W.2d 246
        (Tex.Crim.App.1987).....................10, 10-11, 12

## IV. STATEMENT REGARDING ORAL ARGUMENT

Oral argument is not requested. Any request for such by State is opposed unless counsel is appointed for Petitioner.

## V. STATEMENT OF THE CASE

Ronald Gene Grizzle, Jr., Petitioner, is asking this court for the opportunity to fully brief the merits of proposition his first degree felony conviction by Respondent state, and subsequent cumulation of sentences, was improperly affirmed by the appellate court below.

## VI. STATEMENT OF PROCEDURAL HISTORY

No motion for rehearing was filed after the court of appeals at Waco (10th Dist.) on 15 January 2015 affirmed conviction in 10-14-00204-CR, Grizzle v. State. Present petition is timely filed on or by extended deadline of 17 April 2015.

Three (3) judgments of guilt and punishment by jury were entered by the 249th Dist. Ct. in Johnson Co. cause no. F48507, State v. Grizzle (Bridewell, P.J.) after conviction on five (5) counts of sexual abuse of a child. Sentence on Count 1 is first degree felony punishment of 60 years confinement, ordered "consecutive with" other two (2) judgments. Sentence on Counts 2 and 3 is second degree punishment set at 10 years confinement, each, mutually concurrent but "consecutive with" the other two (2) judgments. Sentence on Counts 4 and 5 is 5 years probated sentence each (ordered by court at 10 years "concurrent" with each other but "consecutive with" the other two [2] judgments).

All three (3) extant judgments entered state the defendant **PLED GUILTY** (CR 106 [cts. 4 & 5]; 111 [ct. 1]; 116 [cts. 2 & 3]). (After nunc pro tunc judgments were seperately entered for counts 1 and 2-with-3 but not for counts 4-with-5.) The record shows Grizzle **PLED NOT GUILTY** (RR v. 5, pp. 17, 18, & 19).

Each extant judgment orders sentences "consecutive with" but none specifies which sentence runs first. The record is therefore on these points simultaneously false, unclear, and misleading. It is underlined unreliable in its present form. No corrective motions are yet filed. The supervisory power of the reviewing authority is invoked and should be exercised in this case.

## VII. GROUNDS FOR REVIEW

### A. GROUND ONE
[Deficiency of Evidence Issue]

THE COURT OF APPEALS DECISION RATIFIED TRIAL COURT CONDUCT VIOLATIVE OF DEFENDANT RONALD GENE GRIZZLE'S RIGHT TO DUE PROCESS PER U.S. CONST. AMEND. XIV AND FAIR TRIAL PER U.S. CONST. AMEND. VI UPON OVERRULING POINT OF ERROR NO. ONE ASSIGNED ON APPEAL (PERTAINING TO STATE'S INSUFFICIENCY OF EVIDENCE FOR CONVICTION ON COUNT ONE[1]), IN THAT THE FIRST DEGREE FELONY CHARGE OF AGGRAVATED SEXUAL ASSAULT REQUIRED PROOF OF CONTACT OR PENETRATION (PER PENAL CODE § 22.021) AND WHERE CIRCUMSTANTIAL AND TESTIMONIAL EVIDENCE ADDUCED TO THE JURY[2] AT MOST DESCRIBES A NON-CONTACT OFFENSE, AND ALSO TESTIMONIAL STATEMENT OF PROSECUTOR (ATTRIBUTED TO TEEN-AGE WITNESS BY DEVISE OF LEADING QUESTION) MISLEADS JURY ON ELEMENT OF CONTACT OR PENETRATION IN TESTIMONY HEARD BY JURY (WHICH THE TESTIFYING TEEN-AGE WITNESS PROMPTLY BELIES[3]). THE RECORD DOES NOT SUPPORT THE COURT OF APPEALS POSITION THAT ADDUCED EVIDENCE WAS SUFFICIENT TO IN THIS CASE CONVICT ACCUSED ON FIRST DEGREE FELONY CHARGE.

---

1. Opinion 1-8 (copy hereunto attached in Appendix).

2. RR v. 5, 122 (line 25) through 125 (line 9) [testimony of alleged victimin on direct examination].

3. Ibid., 124 (cf. lines 3—7 versus 8—12).

## B. GROUND TWO
### [Seperation of Powers Issue]

IN THAT THE SUPREME COURT OF THE UNITED STATES, IN OREGON V. ICE, 129 S. CT. 711, 717 (2009) DEFINED AN EXCEPTION TO RULE SET FORTH IN APRENDI V. N.J., 530 U.S. 466 (2000) TO PERMIT A SENTENCING JUDGE RATHER THAN JURY TO DETERMINE FACTS REQUIRED TO IMPOSE CONSECUTIVE RATHER THAN CONCURRENT SENTENCES, THE TEXAS LEGISLATURE IS NONETHELESS IN VIOLATION OF APRENDI, SUPRA (WHERE AT 482-483, THE COURT EXPLAINED THAT A LEGISLATURE CANNOT "REMOVE [] THE JURY FROM THE DETERMINATION OF A FACT THAT, IF FOUND, EXPOSES THE CRIMINAL DEFENDANT TO A PENALTY EXCEEDING THE MAXIMUM HE WOULD RECEIVE IF PUNISHED ACCORDING TO THE FACTS REFLECTED IN THE JURY VERDICT ALONE[,]") WHERE TEX. PENAL C. § 3.01 ALLOWS THE EXECUTIVE BRANCH OF TEXAS GOVERNMENT TO DETERMINE "FACT" OF WHETHER CHARGES JOINED IN ONE CHARGING INSTRUMENT ARE A "SINGLE CRIMINAL EPISODE" [AS TO PERMIT CONSECUTIVE SENTENCES BY JUDGE]. THE LEGISLATIVE BRANCH IS THEREBY DEPRIVING THE JUDICIARY BRANCH OF ITS PROPER FACT-FINDING ROLE BY IMPROPERLY ASSIGNING SAME TO THE EXECUTIVE BRANCH, IN VIOLATION OF SEPERATION OF POWERS. THIS HARMED PRESENT PETITIONER'S SUBSTANTIAL RIGHTS.[4]

---

4. RR v. 8, 34-37, 80 (sentences cumulated after multiple convictions in one trial grounded on EXECUTIVE's pretrial fact-finding alleged offenses are a "criminal episode" that by single indictment lay mandatory presumption for cumulating sentences).

## VIII. ARGUMENT

### A. Preliminary Statement

The required brevity of a petition for discretionary review allows only request that full briefing be permitted. Petitioner would impress on this Court that the matters raised in this case are important to the jurisprudence of the State of Texas.

Petitioner's grounds, _infra_, indicate need for a check by the **JUDICIAL** branch of Texas government (viz., this court qua the "judiciary") on the threat of oppression of the people by a power-bloated **EXECUTIVE** branch (the "executive"). Petitioner's second ground, _infra_, significantly implicates also the Texas **LEGISLATIVE** branch of government (the "legislature"). Review should be granted where reoccurrence of the problems laid bare here are likely to reoccur in Texas criminal prosecutions.

### B. Why Review Should Be Granted On Ground One

### Ground 1 Submitted

THE COURT OF APPEALS DECISION RATIFIED TRIAL COURT CONDUCT VIOLATIVE OF DEFENDANT RONALD GENE GRIZZLE'S RIGHT TO DUE PROCESS PER U.S. CONST. AMEND. XIV AND FAIR TRIAL PER U.S. CONST. AMEND. VI UPON APPEAL (PERTAINING TO STATE'S INSUFFICIENCY OF EVIDENCE FOR CONVICTION ON COUNT ONE), IN THAT THE FIRST DEGREE FELONY CHARGE OF AGGRAVATED SEXUAL ASSAULT REQUIRED PROOF OF CONTACT OR PENETRATION (PER PENAL CODE § 22.021) AND WHERE CIRCUMSTANTIAL AND TESTIMONIAL EVIDENCE ADDUCED TO THE JURY AT MOST DESCRIBED A NON CONTACT OFFENSE, AND ALSO TESTIMONIAL STATEMENT OF PROSECUTOR (ATTRIBUTED TO TEEN-AGE WITNESS BY DEVISE OF LEADING QUESTION) MISLEADS JURY ON ELEMENT OF CONTACT OR PENETRATION IN TESTIMONY HEARD BY JURY (WHICH THE TESTIFYING TEEN-AGE WITNESS PROMPTLY BELIES). THE RECORD DOES NOT SUPPORT THE COURT OF APPEALS POSITION THAT SUFFICIENT EVIDENCE WAS ADDUCED TO IN THIS CASE CONVICT ACCUSED ON FIRST DEGREE FELONY CHARGE.

## 1. THE ELEMENTS OF FIRST DEGREE FELONY APPEAR ON RECORD TO ARISE IN AND FROM PRE-INDICTMENT REPORT OF QUESTIONABLE RELIABILITY.

Conflicting statements of record, contained in a medical report authenticated at trial by nurse/witness Rebecca Sullivan, affected Ronald Gene Grizzle's substantial rights. Sullivan created the report during a 90-minute non-physician exam of the alleged teen-age complainant/witness in present case. The exam yielded no treatable medical findings of physical trauma. Exam was result of referral by the state child protective services (CPS) agency. Sullivan's role was as a "forensic" interviewer, which means her function was that of an investigator. She knew her "medical" report could be evidence for criminal prosecution of Petitioner, whom Sullivan's report accuses. The patient's statement identifying Petitioner was nor pertinent to diagnosis for medical treatment. The medical history Sullivan recorded was clearly intended to evidence "fact" of alleged sexual abuse.

The report shows contrary statements. Both cannot be true. The patient, Sullivan reports, said penetration of her mouth by the sexual organ of the accused occurred. But also that same was only an attempt. The patient would later be a witness at trial. In the meantime, subsequent to Sullivan's report, Ronald Gene Grizzle was indicted on charges of both indecency with a child by contact and exposure, and also on charge of aggravated sexual assault (wherein the element of sexual contact OR penetration is required). Subsequent conviction was affirmed on appeal.

Sullivan at trial reiterated her report's content. She alleged, again, that the patient ("H. H.") claimed penetration. Against this backdrop, H. H., age 14 at trial, later testified.

The cold record reveals cracks in Sullivan's foundational record and testimony. These, in the heat of trial, the jury may have missed. For example, on direct examination, this colloquy occurs:

[PROSECUTOR]: Is there a number [of children you examined]?
[Sullican]: I did it full time for five years, **so** I **USUALLY say** well over a thousand children.

RR v. 5, 149 (emphasis hereon). Sullivan indicates she is used to being asked and answering this exact question. She is therefore vague in her answer by design. Sullivan evades truth by offering assumed facts (and admitting she sometimes answers differently). This does not impugn her credentials or that she used to work where H. H. was examined by Sullivan. It does show attitude.

Sullivan's report is State's Exhibit 14 (RR vol. 9) (offered at RR v. 5, 152-153, admitted at 153). Sullivan claims page 1 of same is in her handwriting (RR v. 5, 154). (Sullivan's initials are however written differently and seem like in another person's handwriting on other pages of the report.) On page 1, under "PATIENT HISTORY(patient's own words)[,]" Sullivan claims H. H. says "[Petitioner] tried to put his dick in my mouth when I was asleep. He did it once when I was 10. I had a tooth loose.... I sat on the toilet and he put it in my mouth." (Although Sullivan wrote age as "10," at trial H. H. said "Eight" [RR v. 5, 125].) Sullivan also wrote "in my mouth" (emphasis hereon). At trial, H. H. said "to my mouth" (RR v. 5, 124, line 4, emphasis hereon). Allowing that perhaps H. H. changed her story, it is as likely that Sullivan got it wrong at her initial entry into the case. Sullivan's entry of the word "in" at once was damning for the accused and guaranteed Sullivan a future role at trial.

Sullivan's handwritten report obfuscates significant facts she claims are spoken by H. H. This is evidenced on the report around the word "in," where the notation looks like this:

out the lights. I sat on the toilet
and he put it (to pull tooth out) in my mouth.

Sullivan <u>wrote</u> the words "to" and "in" proximate to each other. "In" is in the relevant line, but her sloppy notation however cannot be accurate as to the spoken cadence she <u>heard</u>. That would not be natural. Thus, this is Sullivan's interpretation of what she heard <u>or</u> <u>wanted</u> <u>to</u> <u>hear</u>. (Or thought she <u>should</u> be hearing.)

The word "in" would indicate contact AND penetration. "In" could be—and was—used by Sullivan to justify entry of sole "Yes" she marked on page 1 of her report. The "Y" mark column for "Yes" was checked by hand-written check-mark of Sullivan. The horizontal line specifies it is "Y" for "ORAL COPULATION OF GENITALS: .... Of assailant by patient[.]" RR v. 9, SX14, 1.

Sullivan's document does not survive critical analysis. She knew what CPS expected of her if they paid for investigative interview (and "medical" exam) of H. H. It is however clear that Sullivan is not precise nor accurate about stating facts on the witness stand <u>nor</u> in a written report. Her report is significant in the case because it by the one word "in" at pre-indictment stage provides the prosecution with elements of <u>contact</u> and <u>penetration</u> that can be used to charge a first degree felony (aggravated sexual assault). "Contact" was alleged in the indictment (CR 11) for aggravated sexual assault of a child. Sullivan had motive to be—and was—inaccurate (ergo **UNRELIABLE**).

## 2. REBECCA SULLIVAN'S REPORT OF PHYSICAL EXAM HAD NO "REASONABLY PERTINENT" DIAGNOSTIC OR TREATMENT VALUE AND SHOULD NOT BE GRANTED "TRUSTWORTHINESS" (VIZ., PROBATIVE BVALUE) AS HEARSAY EXCEPTION PER TEXAS RULES OF EVIDENCE 803(4).

There is a hearsay exception for statements made for purpose of medical diagnosis and treatment, per Texas Rules of Evidence, Rule 803(4). This includes statements "describing medical history ... insofar as reasonably pertinent to diagnosis or treatment." It is required that the patient know her answers to a medical professional's questions are for such purpose. The medical exam cannot be a straw man ploy to procure admission of otherwise inadmissible hearsay.

> [W]ithout the child appreciating that any statement made to the [CPS worker] was for purpose of medical treatment, there is no basis for the statement having the trustworthiness on which this exception is based.

Gohring v. State, 967 S.W.2d 459, 452 (Tex.App.—Beaumont 1998, no pet.). In Gohring, the court held "the trial court erred in admitting the [CPS worker] testimony because it does not fall within the exception set forth in Rule 803(4)." In the present case, Sullivan was hired by CPS to interview H. H. This makes Sullivan a CPS "worker." H. H., age 13 at time of exam, cannot have expected medical "treatment" for content of interrogation. H. H.'s statement about alleged acts of Petitioner dating back several years were not "pertinent" to diagnosis or treatment. Sullivan recorded that a sexual contact or penetration occurred, but also that same was only an attempt. The defense made no hearsay objection to Sullivan's testimony, but that is beside the point. Texas Rules of Evidence, Rule 103(d) permits this Court to take "notice of fundamental errors affecting substantial

rights although they were not brought to the attention of the court." Where Sullivan's report establishes allegations of the elements of contact and penetration, and same report is admitted in evidence at trial, it affected Petitioner's substantial rights. It is evident that Sullivan's report, and Sullivan's trial testimony at which same is authenticated, contributed to the jury finding of guilt on the first degree felony offense. The questionable content of Sullivan's report was harmful to the accused. But what did the patient/witness, H. H., herself say? What did H. H. mean when she told Sullivan (IF she told Sullivan) "he did it once..." Was she talking about an _attempt_ or actual _contact_ or/and _penetration_? [Setting aside for the moment variance in story told by H. H. about being "10" (IF she said "10") and the trial testimony of her saying she was "eight" at time of the alleged incident.]

3. **ON DIRECT EXAMINATION, THE "COMPLAINANT" TEEN-AGE WITNESS, CONSISTENT WITH HER OUT-OF-COURT STATEMENT TO REBECCA SULLIVAN, BELIES AND IMPEACHES THE PRESUMPTION THAT ELEMENTS OF FIRST DEGREE FELONY EXIST—EXCULPATING THE ACCUSED.**

What the record indicates is that an ambitious forensic interviewer (think "_investigator_" with nurse credentials in this case) hand-wrote a document with elements vital for a first degree felony charge. What later role did _prosecutor_ play? Was the truth-finding mission of the _court_ fair in this case? Here, accused was denied the Due Process and Fair Trial guaranteed to him per U.S. Const. Amend. XIV and Amend. VI, respectively.

The prosecutor relied heavily on Sullivan's claims. The trial transcript shows the prosecutor also relied on improper leading questions that badgered H. H. and mislead the petit jury.

Nonetheless, despite the prosecutor's emotionally convicting line of leading questions of H. H. on direct, her immediate responses are bifurcated. On the one hand, H. H. helps establish elements indicating first degree felony occurred. Then, at prosecutor's opening for contrary answer, **H. H. does exactly respond contrariwise and BELIES her immediately preceding testimony**. It is obvious, on review, that the prosecutor is testifying through leading questions. Yet despite undue influence from such a power, the basic truth is unbroken. H. H.'s plainly yielded answers manage to maintain that **no contact nor penetration occurred as far as HER OWN descriptions establish**. See RR v. 5, 123-125. [All questions ("Q") below by prosecutor, answers ("A") by H. H.]

Q. .... Just tell the jury what happened. ....

. . . .

A. And I walked in the bathroom, and I was like, Ronnie, will you pull my tooth? And he said, yeah. And then he sat there like a minute and he said, Let me go get the flashlight. So he went in the room and got the flashlight and came out. And he's like let me turn out the light cuz I can see better, so he turned off the [p. 124] light. And he gave me the flashlight so I was holding it, and then he like pulled down his pants and kind of like -- I wasn't sure what he was doing, so I started like moving the light around to figure it out, and then I **SAW** that he had it **TO** my mouth. [Emphasis hereon.]

At this point the prosecutor's first degree felony case is in trouble. H. H. is alleging **exposure** ("I saw") but NEITHER contact NOR penetration. So the prosecutor then asks:

Q. And did you **FEEL** the the penis **IN** your mouth?

[Emphasis hereon.] H. H. then acquiesces POSITIVELY and this establishes presumption that **contact and penetration occurred**.

A. Yes, sir.

Then the prosecutor, in attempt to boost strength of testimony he provided H. H., instead vitiates his own case.

Q. Again, did it appear like maybe he was trying to go to the bathroom and had nothing to do with you or was he **TRYING** to do this to you? [Emphasis hereon.]

A. He was **TRYING** to do it to me. [Emphasis hereon.]

H. H. here acquiesced POSITIVELY again. She is cooperative and following each wind the prosecutor blows. The game-changing problem is that **TRYING IS NOT THE SAME THING AS DOING**. Per Texas Penal Code § 15.01(d), an attempted offense is "one category lower than the offense attempted[.]" This means that if offense **ATTEMPTED** as described by the one witness here with personal knowledge of same (other than the accused) is a _first_ degree _felony_ IF completed, the highest possible charge for indictment would be a _second degree felony_. (Such was not charged here.) Prosecutor then tries to rehabilitate _himself_ by badgering H. H.

Q. And how -- what was the lighting like in that bathroom?

A. It was dark.

Q. How do you know that it was, in fact, his penis that went into your mouth? [Prosecutor insisting "into" is fact.]

A. Because I kind of **LOOKED**, trying to figure it out and I **SAW** it. [**SAW IT** she said, **NOT FELT IT**.] **[p. 125]**

Q. Okay. And is the thing that you **FELT**, would that be -- it wouldn't be a flashlight? [Prosecutor _is testifying_ "felt" and misleading the jury. _Witness_ said "saw" at RR v. 5, 124, ante.]

A. No. [The witness fell victim to a compound question. She could have been saying no to "felt" or no to "flashlight." The prosecutor has shamelessly prejudiced trial by testifying.]

Q. Or anything else? [Prosecutor still pressing "felt." By this point, the jury apparently forgot origin of "felt."]

A. No. [Is witness saying she **FELT** nothing?]

Q. In other words, you're sure that's what it was? [This is not just a leading question, it is a conclusory statement. The prosecutor is misleading witness AND jury by pressuring H. H. to (after unrelenting presumptuous line of testimonial statements cloaked as leading questions) confirm his fact-finding. This isn't development of testimony, this is **FABRICATION**. Such malfeasance may be **subornation of perjury** (!). H. H. is under sheer duress.]

A. Yes, sir. [H. H. is a truly cooperative witness, now for a THIRD time acquiescing POSITIVELY to the prosecutor's own words. The prosecutor has at this point established the illusory appearance of commission of contact and penetration. But in **FACT**, what the cold record establishes is that H. H. only described attempted commission at most, and that she saw a penis.]

Q. What did you do?

A. I shoved him up against the wall and I ran out.

. . . .

Q. Now after this incident happened -- again, how old were you at this time?

A. Eight. [Not ten (10), as Rebecca Sullivan wrote in her report, State's Exhibit 14, p. 1 (RR v. 9). Clearly, someone here miscolored the facts in at least this one detail.]

What the above colloquy from RR v. 5, 123-124 shows is that the "evidence" created by nurse/witness Rebecca Sullivan is a house of cards that collapses at trial. The prosecutor tried mightily to pull the rabbit of "credible fact" out of the hat of contrary statements by the alleged victim, witness/complainant H. H. The jury bought the act and found Petitioner guilty of the first degree felony of aggravated sexual assault of a child, as charged in the indictment. On appeal, Petitioner qua Appellant raised insufficiency of evidence should reverse. The court of appeals however affirmed. The court of appeals clerks and judges misconstrued the record and erred. Review should be granted by this Court to enable full briefing. Only then can this Court's more experienced clerks and judges here render overdue justice.

## C. WHY REVIEW SHOULD BE GRANTED ON GROUND TWO

### Ground 2 Submitted
### (Seperation of Powers Issue)

IN THAT THE SUPREME COURT OF THE UNITED STATES, IN OREGON V. ICE, 129 S. Ct. 711, 717 (2009) DEFINED AN EXCEPTION TO RULE SET FORTH IN APRENDI V. N.J., 530 U.S. 466 (2000) TO PERMIT A SENTENCING JUDGE RATHER THAN JURY TO DETERMINE FACTS REQUIRED TO IMPOSE CONSECUTIVE RATHER THAN CONCURRENT SENTENCES, THE TEXAS LEGISLATURE IS NONETHELESS IN VIOLATION OF APRENDI, SUPRA (WHERE AT 482-483, THE COURT EXPLAINED THAT A LEGISLATURE CANNOT "REMOVE [] THE JURY FROM THE DETERMINATION OF A FACT THAT, IF FOUND, EXPOSES THE CRIMINAL DEFENDANT TO A PENALTY EXCEEDING THE MAXIMUM HE WOULD RECEIVE IF PUNISHED ACCORDING TO THE FACTS REFLECTED IN THE JURY VERDICT ALONE[,]") WHERE TEX. PENAL C. § 3.01 ALLOWS THE EXECUTIVE BRANCH OF TEXAS GOVERNMENT TO DETERMINE "FACT" OF WHETHER CHARGES JOINED IN ONE CHARGING INSTRUMENT ARE A "SINGLE CRIMINAL EPISODE" [AS TO PERMIT CONSECUTIVE SENTENCES BY JUDGE]. THE LEGISLATIVE BRANCH IS THEREBY DEPRIVING THE JUDICIAL BRANCH OF ITS PROPER FACT-FINDING ROLE BY IMPROPERLY ASSIGNING SAME TO THE EXECUTIVE BRANCH, IN VIOLATION OF SEPERATION OF POWERS. THIS HARMED PRESENT PETITIONER'S SUBSTANTIAL RIGHTS.

1. THE SEPERATION OF POWERS DOCTRINE DOES NOT ALLOW THE TEXAS LEGISLATURE TO BY STATUTE PERMIT THE EXECUTIVE TO USURP THE JUDICIAL FACT-FINDING POWER THAT AFFECTS SUBSTANTIAL RIGHTS.

The Constitution of the State of Texas, Art. II, § 1 divides powers of government into three seperate departments: a "Legislative," an "Executive," and a "Judicial." Section 1 specifies that "no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others [except as expressly therein provided]." This allows for checks and balances in Texas government.

A seperation of powers violation was found on the part of Texas legislature in Meshell v. State, 739 S.W.2d 246 (Tex.Crim. App.1987). In Meshell, the court held that Tex. Const. Art. 2, § 1 does not allow for the legislature to "control a prosecutor's

preparation for trial[.]" Meshell, supra, at 257. The **JUDICIARY** in Meshell decided the **LEGISLATURE** may not dictate to the **EXECUTIVE** what NOT to do in preparing for criminal prosecution.

Present Petitioner represents the **LEGISLATURE** contravenes Tex. Const. Art. II § 1 by letting the **EXECUTIVE** usurp **JUDICIAL** fact-finding power via Tex. Penal Code § 3.01. Said statute lets **EXECUTIVE** in criminal prosecutions at charging stage fact-find when and how multiple charges are a "single criminal episode." **EXECUTIVE** can then by one charging instrument compell **JUDICIARY** to conduct one trial on multiple charges. Conviction of accused on such is then used by **EXECUTIVE** to impell **JUDICIARY** to "stack" sentences per Tex. Pen. C. § 3.03. Due Process is abridged where **JUDICIARY** proceeds on **EXECUTIVE's** findings without proof of fact.

## 2. THE TEXAS JUDICIARY IS FORCED BY LEGISLATIVE MANDATE TO SURRENDER JUDICIAL FACT-FINDING POWER BY PENAL CODE § 3.01.

The **LEGISLATURE** provides a guide for the **EXECUTIVE** branch for finding of facts to decide when to charge multiple offenses against a single defendant in one instrument for one **JUDICIAL** process (trial). Penal Code 3.01 defines "criminal episode" as commission of two or more offenses (with qualifiers). A single episode may contain multiple offenses. A "criminal episode" requires common nexus, meaning the acts not be overly attenuated in time and space. Pen. C. § 3.01(a)-(b) requires one transaction contain the offenses, or the connective nexus of "common scheme or plan[.]" Or the repeated commission of same offense.

A problem arises where these **LEGISLATED** conditions are framework for questions of substantive fact someone must decide. It has been recognized that fact-finding per Pen. C. § 3.01 is

done by the **EXECUTIVE**. <u>Laporte v. State</u>, 840 S.W.2d 412, 414 (Tex.Crim.App.1992) ("[A] prosecutor is encouraged to clear case dockets by trying more than one case in a single trial whenever <u>multiple</u> <u>offenses</u> <u>arising</u> <u>from</u> <u>a</u> <u>single</u> <u>criminal</u> <u>episode</u> are alleged against a single defendant[.]") (emphasis hereon). Thus, the **JUDICIARY** is acquiescing to the **LEGISLATURE's** mandate to the **EXECUTIVE** (mandate in presumed sense, where **JUDICIARY** itself is by court-enacted law "legislating" its own subservient posture).

In present case, prosecutors determined "single criminal episode" as fact. Multiple allegations appear in <u>one</u> indictment. The offenses alleged span several years and implicate different statutes. On basis of such fact-finding by the **EXECUTIVE**, court was later impelled (nay, compelled) to cumulate sentences.

**3. THIS CASE IS APPROPRIATE VEHICLE FOR CORRECTION OF THE SEPERATION OF POWERS VIOLATION THE LEGISLATURE EFFECTED BY WORDS IN PENAL CODE § 3.01, AND TO RESTORE TO THE JUDICIARY THE FACT-FINDING POWER IMPROPERLY LEGISLATED TO THE EXECUTIVE.**

A clear example of the **EXECUTIVE** usurping **JUDICIAL** power by mandate of the **LEGISLATURE** is found in the present case. Note the following from the trial transcript (involving cumulation of sentences based on conviction of Petitioner on multiple offenses alleged as a single criminal episode), at RR v. 8, 34-35:

MR. [DEFENSE COUNSEL] MASON: [Defense moves] jury [determine] whether [Petitioner's] conduct was the same criminal episode. It is a matter that's -- could be in dispute and I think should be submitted to a jury. I think there should be proof beyond a reasonable doubt. .... **[p. 35]** the [fact-finder (jury in this case)] should be ... allowed to consider all facts ... in the case .... [such as] <u>CRIMINAL EPISODE</u>[.] [This implicates U.S. Const. 14th Amend. Due Process and 6th Amend. Fair Trial.]

MR. [STATE'S COUNSEL] BOYLE: ... [A]ll five counts **WERE** included in the same indictment. There was no objection by the defense to that. [Viz., e.g., no motion to sever.] The defendant has now been convicted of all five counts, **so there's no [FACTUAL] issue for the [fact-finder (jury in this case)] to decide as to**

**CRIMINAL EPISODE** as they were in the same indictment [Prosecutor thereby suggests the trial judge is precluded from fact-finding.] (All emphasis in foregoing excerpts provided.) As thus shown, the **EXECUTIVE** in Texas can (and in present case did) decide **ALL** elemental facts for **JUDICIAL** cumulation of sentences. Judges may think it a time-saver, but this violates seperation of powers.

In Aprendi v. New Jersey, 530 U.S. 466 (2000), the U.S. Supreme Court's holding raises a dike against the **LEGISLATURE** encroaching on the **JUDICIAL** function. The Court explained that a **LEGISLATURE** cannot "remove [] the jury from the determination of a fact that, if found, exposes the criminal defendant to a penalty exceeding the maximum he would receive if punished according to the facts reflected in the jury verdict alone." Aprendi, supra, at 482-483 (emphasis in original). The Aprendi Supreme Court thus makes a **seperation of powers** judgment. **JUDICIARY** is fact-finder. (Jury as fact-finder is juristic person, like a judicial officer.)

The Aprendi rule works to prevent the **EXECUTIVE** from usurping **JUDICIAL** power. Nine years after Aprendi, the U.S. Supreme Court recognized an exception to the Aprendi rule. When a defendant is tried and convicted on multiple offenses, the sentencing judge may make the findings of fact necessary for the imposition of consecutive (as opposed to concurrent) sentences. Oregon v. Ice, 129 S. Ct. 711, 717 (2009) (upholding state statute allowing judge NOT jury to make factual findings to cumulate sentences). This exception is in accord with Aprendi's **seperation of powers** judgment. The fact-finding remains with the **JUDICIARY**. Neither Aprendi nor Ice allow for the **EXECUTIVE** to usurp the **JUDICIAL** fact-finding function. But Texas does.

The Texas **JUDICIARY** per **LEGISLATURE's** Penal C. 3.01—3.03 accepts as mandatory presumption that a "single criminal episode" exists when the **EXECUTIVE** says it is so. This fact-finding by prosecutors is slammed on the bench by "single criminal action" (trial) to procure multiple convictions. Penal Code § 3.03 is then invoked to press for cumulation of sentences. The **JUDICIARY** can be locked out of her own wedding. The **EXECUTIVE's** pretrial presumption that "single criminal episode" is fact <u>not</u> <u>only</u> places on the accused the burden of persuasion that the basic facts of alleged offenses do not prove elemental facts for Penal Code 3.01 "criminal episode." <u>But</u> <u>also</u>, absent timely objection, his U.S. Const. Amend. XIV Due Process is abridged where the mandatory presumption can <u>force</u> <u>the</u> **JUDICIARY** to conduct "legal" trial on multiple charges that place accused in jeopardy of possible cumulation of sentences. It is too late **AFTER** trial for **JUDICIARY** to check for "criminal episode" viability. Yet absent proof beyond reasonable doubt, cumulation implicates Fair Trial.

Present Petitioner at trial relied on <u>Aprendi</u> to ask the <u>judge</u> to let the <u>jury</u> decide <u>facts</u> regarding whether or not there was a "single criminal episode" as would justify cumulating his sentences. The **EXECUTIVE** (prosecutor) argued that there was no fact issue to be resolved because the **EXECUTIVE** indicted on multiple counts (RR v. 8, 35). Prosecutor argued "[i]t is well-founded case law that ... judges, not juries decide whether to stack sentences." The defense was overruled. RR v. 8, 37-38. The **EXECUTIVE**, <u>not</u> the **JUDICIARY**, made the elemental findings for stacking sentences here. This contravenes <u>Aprendi</u> AND <u>Ice</u>.

## D. Summation

The court of appeals got it wrong in overruling the point that insufficiency of evidence as to judgment on Count 1 warrants reversal and acquittal. The opinion is myopic because the court does not appear to have analyzed the record. The testimony of the teen-age H. H. is exculpatory. It is only the testimonial statements of the State, placed in H. H.'s mouth by improper and badgering leading questions that misled the jury. The **EXECUTIVE** power of government does not extend to fabricating physical nor testimonial evidence. Nor to subornation of perjury. Review should be granted to accord 14th Amendment appellate Due Process on whether trial was fair per the 6th Amendment.

Review should also be granted to allow full briefing on the seperation of powers issue here identified. "State courts, like federal courts, have a constitutional obligation ... to uphold federal law." Stone v. Powell, 428 U.S. 465, 494 n. 35 (1979). This appellate court has in this case the opportunity to rule on the present application of Aprendi v. N.J., supra, and Oregon v. Ice, supra, in this State's jurisprudence, and these cases' impact on Texas Penal Code §§ 3.01 and 3.03.

## IX. PRAYER FOR RELIEF

Petitioner prays review be granted to allow full briefing.

Respectfully submitted,

Ronald Gene Grizzle
Petitioner, pro se

Ronald Gene Grizzle
Prisoner ID 1935380
TDCJ-ID, Polunsky Unit
3872 FM 350 South
Livingston, Texas 77351

## X. PROOF OF SERVICE

### Certificate of Service

UNDERSIGNED, by First Class Mail on 12 April 2015 caused service of a true and correct duplicate copy of the foregoing document on each of the parties listed below, by deposit of such in sealed envelopes with postage prepaid in the prison mailbox, and so certifies.

### Respondent State's Counsel

Lisa C. McMinn,
State Prosecuting Attorney
P. O. Box 13046
Austin, Texas 78711

### Respondent's Counsel In Lower Courts

D. S. Hanna,
Johnson County Dist. Atty.
204 South Buffalo, Suite 209
Cleburne, Texas 76033

_____
SIGNATURE

## APPENDIX

(Court of Appeals Opinion)



# IN THE
# TENTH COURT OF APPEALS

## No. 10-14-00204-CR

RONALD GENE GRIZZLE, JR.,

                                          **Appellant**

v.

THE STATE OF TEXAS,

                                          **Appellee**

### From the 249th District Court
### Johnson County, Texas
### Trial Court No. F48507

## MEMORANDUM OPINION

In eight issues, appellant, Ronald Gene Grizzle Jr., challenges his convictions for one count of aggravated sexual assault of a child, two counts of indecency with a child by contact, and two counts of indecency with a child by exposure.[1] *See* TEX. PENAL

---

[1] For the count of aggravated sexual assault of a child, the jury imposed a sixty-year sentence. Appellant also received ten-year sentences for the two counts of indecency with a child by contact. With respect to the two counts of indecency with a child by exposure, appellant received five-year sentences, which were probated for a period of ten years. And in response to the State's written motion, the trial court cumulated the sentences imposed for the one count of aggravated sexual assault of a child and the two counts of indecency with a child by contact.

CODE ANN. § 21.11(a)(1), (a)(2)(A) (West 2011); *see also id.* § 22.021(a)(1)(B)(ii) (West Supp. 2014). We affirm.

## I.  SUFFICIENCY OF THE EVIDENCE

In his first five issues, appellant argues that the evidence is insufficient to support his convictions for one count of aggravated sexual assault of a child, two counts of indecency with a child by contact, and two counts of indecency with a child by exposure.

### A.  Standard of Review

In *Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011), the Texas Court of Criminal Appeals expressed our standard of review of a sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

*Id.*

Our review of "all of the evidence" includes evidence that was properly and improperly admitted. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). And if the record supports conflicting inferences, we must presume that the factfinder resolved

the conflicts in favor of the prosecution and therefore defer to that determination. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793. Furthermore, direct and circumstantial evidence are treated equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper*, 214 S.W.3d at 13. Finally, it is well established that the factfinder is entitled to judge the credibility of the witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

The sufficiency of the evidence is measured by reference to the elements of the offense as defined by a hypothetically correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically-correct jury charge does four things: (1) accurately sets out the law; (2) is authorized by the indictment; (3) does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability; and (4) adequately describes the particular offense for which the defendant was tried. *Id.*

**B.    Aggravated Sexual Assault of a Child**

Under section 22.021(a)(1)(B)(ii) of the Penal Code, the State must prove beyond a reasonable doubt that appellant intentionally or knowingly caused the penetration of the mouth of a child by his sexual organ. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(ii). Here, the child victim, H.H., testified that she was fourteen years old at the time of trial and that she reported numerous instances of sexual misconduct perpetrated by

appellant when she was twelve years old. Later, H.H. recalled one evening where appellant agreed to pull her loose tooth. Specifically, H.H. stated the following:

> And I walked in the bathroom, and I was like, Ronnie, will you pull my tooth? And he said, ["]Yeah.["] And then he sat there like a minute and he said, ["]Let me go get the flashlight.["] So he went in the room and got the flashlight and came out. And he's like ["]let me turn out the light cuz [sic] I can see better,["] so he turned off the light. And he like gave me the flashlight so I was holding it, and then he like pulled down his pants and I kind of like—I wasn't sure what he was doing, so I starting moving the light around to figure it out, and then I saw that he had it to my mouth.

H.H. later clarified that, on this occasion, appellant had placed his penis in her mouth. H.H. testified that it did not appear to her that appellant had accidentally put his penis in her mouth; rather, "[h]e was trying to do it to me."

Appellant testified that he did not remember ever pulling H.H.'s tooth in the bathroom or anything "going wrong" with pulling H.H.'s teeth. However, appellant's testimony was undermined by Sheila Batson, who corroborated H.H.'s story about appellant going into the bathroom to pull H.H.'s tooth. Additionally, Batson noted that she found H.H. crying in her bedroom after the incident and that H.H. had called appellant "a jerk."

A child victim's testimony alone is sufficient to support a conviction for aggravated sexual assault of a child or indecency with a child. TEX. CODE CRIM. PROC. ANN. art. 38.07 (West Supp. 2014); *Abbott v. State*, 196 S.W.3d 334, 341 (Tex. App.—Waco 2006, pet. ref'd); *Tear v. State*, 74 S.W.3d 555, 560 (Tex. App.—Dallas 2002, pet. ref'd); *see also Cantu v. State*, 366 S.W.3d 771, 775 (Tex. App.—Amarillo 2012, no pet.).

> The courts will give wide latitude to testimony given by child victims of sexual abuse. The victim's description of what happened need not be

precise, and the child is not expected to communicate with the same level of sophistication as an adult. Corroboration of the victim's testimony by medical or physical evidence is not required.

*Cantu*, 366 S.W.3d at 776 (internal citations omitted).

To the extent that appellant's testimony differs from that of H.H., we note that a jury may believe all, some, or none of any witness's testimony. *See Chambers*, 805 S.W.2d at 461. And by finding appellant guilty, the jury obviously believed H.H.'s version of the incident. Therefore, viewing all the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have concluded that appellant committed the offense of aggravated sexual assault of a child. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(ii); *see also Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Lucio*, 351 S.W.3d at 894; *Hooper*, 214 S.W.3d at 13.

## C.     Indecency With a Child by Contact

Appellant was also convicted of two counts of indecency with a child by contact, which occurs if a person engages in "sexual contact" with a child younger than seventeen years of age. *See* TEX. PENAL CODE ANN. § 21.11(a)(1). The Penal Code's definition of "sexual contact" includes the touching of the anus, breast, or any part of the genitals of a child with the intent to arouse or gratify the sexual desire of any person. *Id.* § 21.11(c). The specific intent to arouse or gratify the sexual desire of any person, as required by section 21.11(c), can be inferred from the defendant's conduct, his remarks, and all surrounding circumstances. *McKenzie v. State*, 617 S.W.2d 211, 216 (Tex. Crim. App. 1981); *Moore v. State*, 397 S.W.3d 751, 754 (Tex. App.—San Antonio 2013, no pet.). Further, a "'complainant's testimony alone is sufficient to support a

conviction for indecency with a child.'" *Moore*, 397 S.W.3d at 754 (quoting *Connell v. State*, 233 S.W.3d 460, 466 (Tex. App.—Fort Worth 2007, no pet.)).

On appeal, appellant specifically challenges the sufficiency of the evidence regarding his intent to arouse or satisfy his sexual desire when he touched H.H.'s breast. Appellant also complains that H.H. only described one specific instance of touching.

At trial, H.H. testified that appellant "would come in there and at night and watch me sleep, or he would touch my breast at night." Later, H.H. stated that she knew appellant was touching her breast "[b]ecause I—one day I was laying [sic] down and I woke up to him put [sic] his hand on my shoulder. And I moved like that and he jerked it back. And then I waited a little while and he put it back on my—he put it on my breast." H.H. recounted that appellant touched her breast often and that she had "gotten used to it where he would do it every night and so I kind of expected it." H.H. also testified that some days appellant would touch her breast over her clothes, and other days he would touch her breast underneath her clothes. Additionally, H.H. recounted other incidents of sexual misconduct perpetrated by appellant and noted that she did not believe that appellant's touching of her breast was an accident. She also recalled that appellant told her that he had "prayed to God about it" and that God had said that it was okay for him to have sex with H.H.

Based on appellant's conduct, remarks, and the surrounding circumstances, we conclude that a rational factfinder could have concluded that appellant touched H.H.'s breast on more than one occasion and that he had the specific intent to arouse or gratify

his own sexual desire each time he touched H.H.'s breast. *See McKenzie,* 617 S.W.2d at 216; *see also Moore,* 397 S.W.3d at 754. Therefore, viewing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have concluded that appellant committed the offense of indecency with a child by contact on two occasions. *See* TEX. PENAL CODE ANN. § 21.11(a)(1); *see also Jackson,* 443 U.S. at 319, 99 S. Ct. at 2789; *Lucio,* 351 S.W.3d at 894; *Hooper,* 214 S.W.3d at 13.

## D.    Indecency With a Child by Exposure

To support a conviction for indecency with a child by exposure, the State was required to prove beyond a reasonable doubt that:   (1) the child was within the protected age group and not married to the accused; (2) the child was present; (3) the accused had the intent to arouse or gratify someone's sexual desire; (4) the adult knew that a child was present; and (5) the accused exposed his anus or genitals.  *See* TEX. PENAL CODE ANN. § 21.11(a)(2)(A).  The record reflects that H.H. testified regarding two specific instances of appellant exposing his genitals to her. The first instance transpired when she was working with appellant in appellant's chicken coop.  H.H. testified that appellant instructed her to sit in a chair and that he turned off the lights.  According to H.H., appellant then walked closer to her and pulled down his pants.  H.H. could see that appellant had also pulled down his underwear.  H.H. was shocked and afraid. H.H. believed that appellant's exposure of his genitals was not an unrelated event but, instead, was intended for her.   H.H. told T.H. about the incident shortly after it happened, and T.H. echoed H.H.'s testimony about the chicken-coop incident.

In addition, H.H. testified about a second incident that transpired while she was sleeping in a recliner. Specifically, H.H. recalled waking up to find appellant standing behind the recliner with his boxers pulled down and his bare penis near her mouth. Appellant explained that he was fixing a nearby curtain, but H.H. testified that she believed that appellant was intentionally exposing his penis to her. The record also contains testimony from H.H. regarding other instances where appellant would take off his clothing or towel to expose his bare penis to her.

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational factfinder could conclude that appellant exposed his genitals to H.H., a child under seventeen years of age, on more than one occasion with the specific intent to arouse or gratify his sexual desire. *See id.; see also Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Lucio*, 351 S.W.3d at 894; *Hooper*, 214 S.W.3d at 13. As such, we hold that the evidence is sufficient to support appellant's convictions for indecency with a child by exposure. *See* TEX. PENAL CODE ANN. § 21.11(a)(2)(A); *see also Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Lucio*, 351 S.W.3d at 894; *Hooper*, 214 S.W.3d at 13. Because we have concluded that appellant's convictions are supported by sufficient evidence, we overrule appellant's first five issues on appeal.

## II. THE TRIAL COURT'S CUMULATION ORDER

In his sixth issue, appellant contends that the trial court erred in cumulating the imposed sentences in Counts 1, 2, and 3 because the cumulation order violated the principles of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and because the jury, rather than the trial court, should determine whether the

sentences should be cumulated. In his seventh issue, appellant argues that the trial court committed reversible error during the punishment phase of trial by denying his request for special instructions in the jury charge regarding consecutive sentencing.

### A. *Apprendi v. New Jersey*

First, we address appellant's assertion that the trial court's cumulation order violated *Apprendi*. In *Apprendi*, the United States Supreme Court determined that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S. Ct. at 2362-63. The Court of Criminal Appeals has stated that *Apprendi* and its progeny clearly deal with the upper-end extension of individual sentences, when that extension is contingent upon findings of fact that were never submitted to the jury. *Barrow v. State*, 207 S.W.3d 377, 379 (Tex. Crim. App. 2006). These decisions do not, however, speak to a trial court's authority to cumulate sentences when that authority is provided by statute and is not based upon discrete fact-finding, but is wholly discretionary. *Id.; see* TEX. CODE CRIM. PROC. ANN. art. 42.08(a). Here, the trial court imposed a valid sentence within the statutorily-prescribed punishment range for each of appellant's convictions. *See Barrow*, 207 S.W.3d at 379. Accordingly, we cannot say that the trial court's cumulation order violated *Apprendi*. *See id.*

### B. Whether the Trial Court Had Authority to Cumulate Appellant's Sentences

Next, appellant argues that the jury, rather than the trial court, had the authority to determine whether his sentences should be cumulated. We disagree.

Texas trial courts have the discretion to order cumulative sentences in virtually every case. *See* TEX. CODE CRIM. PROC. ANN. art. 42.08(a) (West Supp. 2014); *Millslagle v. State*, 150 S.W.3d 781, 784 (Tex. App.—Austin 2004, pet. dism'd untimely filed); *see also York v. State*, No. 10-11-00413-CR, 2012 Tex. App. LEXIS 4963, at *6 (Tex. App.—Waco June 20, 2012, pet. ref'd) (mem. op., not designated for publication). However, when multiple offenses arising out of the same criminal episode are consolidated for a single trial, and the defendant is found guilty of more than one offense, section 3.03(a) of the Texas Penal Code provides a limit on the trial court's discretion to cumulate the sentences. *See* TEX. PENAL CODE ANN. § 3.03(a) (West Supp. 2014); *Millslagle*, 150 S.W.3d at 784; *see also York*, 2012 Tex. App. LEXIS 4963, at **6-7. Section 3.03(b)(2)(A) creates an exception to this exception; that is, it exempts certain offenses, including indecency with a child and aggravated sexual assault of a child, from the application of section 3.03(a). *See* TEX. PENAL CODE ANN. § 3.03(b)(2)(A); *Millslagle*, 150 S.W.3d at 784; *see also York*, 2012 Tex. App. LEXIS 4963, at *7.

In the instant case, appellant was convicted of one count of aggravated sexual assault of a child, two counts of indecency with a child by contact, and two counts of indecency with a child by exposure. *See* TEX. PENAL CODE ANN. §§ 21.11(a)(1), (a)(2)(A), 22.021(a)(1)(B)(ii). Each of these offenses are included in the section 3.03(b)(2)(A) exceptions to the exception. *See id.* § 3.03(b)(2)(A). As such, we conclude that the trial court had the discretion to order cumulative sentences in this case. *See* TEX. CODE CRIM. PROC. ANN. art. 42.08(a); *Millslagle*, 150 S.W.3d at 784; *see also York*, 2012 Tex. App. LEXIS 4963, at *6.

## C. The Jury Charge

And finally, appellant argues that the trial court committed reversible error during the punishment phase of trial by denying his request for special instructions in the jury charge regarding consecutive sentencing. In support of this argument, appellant, once again, relies on *Apprendi*.

In reviewing a jury-charge issue, an appellate court's first duty is to determine whether error exists in the jury charge. *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996). If error is found, the appellate court must analyze that error for harm. *Middleton v. State*, 125 S.W.3d 450, 453-54 (Tex. Crim. App. 2003). If an error was properly preserved by objection, reversal will be necessary if the error is not harmless. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). Conversely, if error was not preserved at trial by a proper objection, a reversal will be granted only if the error presents egregious harm, meaning appellant did not receive a fair and impartial trial. *Id.* To obtain a reversal for jury-charge error, appellant must have suffered actual harm and not just merely theoretical harm. *Sanchez v. State*, 376 S.W.3d 767, 775 (Tex. Crim. App. 2012); *Arline v. State*, 721 S.W.2d 348, 352 (Tex. Crim. App. 1986).

Under Texas law, the trial court must provide the jury with "a written charge setting forth the law applicable to the case." TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007); *see Walters v. State*, 247 S.W.3d 204, 208 (Tex. Crim. App. 2008). However, this Court has noted that the "Penal Code and Code of Criminal Procedure assign to the trial judge the responsibility for determining whether to cumulate sentences or allow them to run concurrently, when there is an option." *Manzano v. State*, No. 10-04-00323-

CR, 2006 Tex. App. LEXIS 1285, at *13 (Tex. App.—Waco Feb. 15, 2006, pet. ref'd) (mem. op., not designated for publication) (citing TEX. CODE CRIM. PROC. ANN. art. 42.08(a); TEX. PENAL CODE ANN. § 3.03(a)-(b)). "No factual determinations are required, so there is nothing for a jury to determine. We hold that due process does not require that the jury be given information about the trial court's ability to cumulate sentences or order them to run concurrently." Id.; see Marrow v. State, 169 S.W.3d 328, 330-31 (Tex. App.—Waco 2005, pet. ref'd); see also Lacy v. State, Nos. 14-05-00775-CR, 14-05-00776-Cr, 14-05-00777-CR, 14-05-00778-CR, 2006 Tex. App. LEXIS 8723, at *6 (Tex. App.—Houston [14th Dist.] Oct. 10, 2006, no pet.) (mem. op., not designated for publication) ("As such, contrary to appellant's assertion, the trial court's authority to cumulate the aggravated sexual assault sentences did not hinge on an implicit finding of fact that the offenses arose out of the same criminal episode. . . . [B]oth federal and state courts have consistently found no *Apprendi* violation where 'a trial court orders the cumulation of sentences which individually lie within the statutory range of punishment but for which the cumulative total exceeds the prescribed statutory maximum for any single offense.'" (quoting Baylor v. State, 195 S.W.3d 157, 160 (Tex. App.—San Antonio 2006, no pet.))).

Therefore, based on the foregoing and our review of the record, we cannot say that the trial court's denial of appellant's special instructions on cumulative sentencing amounted to a jury-charge error. *See Hutch*, 922 S.W.2d at 170. We overrule appellant's sixth and seventh issues.

### III. APPELLANT'S MOTION FOR MISTRIAL

In his eighth issue, appellant asserts that the trial court erred during the guilt-innocence phase of trial when it denied his motion for mistrial regarding the prosecutor's direct examination of T.H.

### A. Standard of Review

We review the denial of a motion for mistrial under an abuse-of-discretion standard. *Archie v. State*, 221 S.W.3d 695, 699-700 (Tex. Crim. App. 2007). Under this standard, we uphold the trial court's ruling as long as the ruling is within the zone of reasonable disagreement. *Id.* "'A mistrial is a device used to halt trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile.'" *Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000) (quoting *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999)). It is appropriate only for "a narrow class of highly prejudicial and incurable errors." *Id.*; *see Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). Therefore, a trial court properly exercises its discretion to declare a mistrial when, due to the error, "an impartial verdict cannot be reached" or a conviction would have to be reversed on appeal due to "an obvious procedural error." *Wood*, 18 S.W.3d at 648 ("A mistrial is required only when the improper question is clearly prejudicial to the defendant and is of such character to suggest the impossibility of withdrawing the impression produced on the minds of the jurors."); *see Ladd*, 3 S.W.3d at 567.

## B.    Discussion

During its case-in-chief, the State called T.H., H.H.'s brother, as a witness. On redirect examination, the State asked T.H. whether he believed his sister's allegations against appellant. T.H. responded, "Yes, sir, I do." At this point, appellant objected that the question invaded the province of the jury regarding the credibility of H.H.'s allegations. The trial court sustained appellant's objection and, upon request, instructed the jury to disregard the question and not consider T.H.'s answer for any purpose in the case. Thereafter, appellant moved for a mistrial, which was denied by the trial court.

On appeal, appellant argues that the aforementioned question and answer amounted to improper bolstering of the State's case and the testimony of H.H, which, in turn, deprived him of a fair trial. We disagree.

"A timely and specific objection is required to preserve error for appeal." *Luna v. State*, 268 S.W.3d 594, 604 (Tex. Crim. App. 2008); *see* TEX. R. APP. P. 33.1(a)(1)(A). "An objection is timely if it is made as soon as the ground for the objection becomes apparent, i.e., as soon as the defense knows or should know that an error has occurred." *Grant v. State*, 345 S.W.3d 509, 512 (Tex. App.—Waco 2011, pet. ref'd) (citing *Neal v. State*, 256 S.W.3d 264, 279 (Tex. Crim. App. 2008)). "If a party fails to object until after an objectionable question has been asked and answered, and he can show no legitimate reason to justify the delay, his objection is untimely and error is waived." *Id.* (citing *Dinkins v. State*, 894 S.W.2d 330, 355 (Tex. Crim. App. 1995) (en banc)). There are, however, the following two exceptions to the proposition of law that a party must object each time he thinks inadmissible evidence is being offered: (1) when the party

has secured a running objection on the issue he deems objectionable; or (2) when the defense counsel lodges a valid objection to all the testimony he deems objectionable on a given subject outside of the presence of the jury. *Ethington v. State*, 819 S.W.2d 854, 858-59 (Tex. Crim. App. 1991). Furthermore, "'[a]n error [if any] in the admission of evidence is cured when the same evidence comes in elsewhere without objection." *Lane v. State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004) (quoting *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998)); *see Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003) ("In addition, a party must object each time the inadmissible evidence is offered or obtain a running objection.").

At trial, both Sheila and Brooke Batson were asked whether they believed the child victim's testimony or, in other words, the same question that was asked of T.H. Both witnesses testified that they believed the child victim's testimony, and the record does not reflect that appellant objected to these questions at the time they were asked or obtained a running objection. Accordingly, because the same testimony was elicited from two other witnesses without an objection, we conclude that the error, if any, pertaining to T.H.'s testimony was cured. *See Lane*, 151 S.W.3d at 193; *Valle*, 109 S.W.3d at 509; *Grant*, 345 S.W.3d at 512.

Furthermore, we note that "[a] mistrial is an appropriate remedy in 'extreme circumstances' for a narrow class of highly prejudicial and incurable errors." *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). A mistrial should be granted only when less drastic alternatives fail to cure the prejudice. *Id.* at 884-85. In the instant case, the trial court instructed the jury to disregard the State's question and T.H.'s answer.

We presume that the jury obeyed the instruction and that the instruction was effective. *See Archie v. State*, 340 S.W.3d 734, 741 (Tex. Crim. App. 2011) ("The law generally presumes that instructions to disregard and other cautionary instructions will be duly obeyed by the jury."). Moreover, appellant has not adequately explained how the question and answer was so clearly prejudicial to the defendant and is of such character to suggest the impossibility of withdrawing the impression produced on the minds of the jurors, especially in light of the overwhelming record evidence indicating guilt. *See Wood*, 18 S.W.3d at 648; *see also Ladd*, 3 S.W.3d at 567. As such, we cannot say that the trial court abused its discretion in denying appellant's motion for mistrial. *See Archie*, 221 S.W.3d at 699-700. We overrule appellant's eighth issue.

## IV. CONCLUSION

Having overruled all of appellant's issues on appeal, we affirm the judgments of the trial court.


AL SCOGGINS
Justice

Before Chief Justice Gray,
    Justice Davis, and
    Justice Scoggins
Affirmed
Opinion delivered and filed January 15, 2015
Do not publish
[CRPM]



Page 16